608 So.2d 673 (1992)
Barbara Thibodeaux & Herbert THIBODEAUX, Plaintiffs-Appellees,
v.
WINN-DIXIE OF LOUISIANA, INC., Defendant-Appellant.
No. 91-726.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
*674 Terrance Hoychick, Funice, for plaintiffs-appellees.
Ziegler, Ackal & Calegero, David J. Calogero, Lafayette, for defendant-appellant.
Before STOKER and YELVERTON, JJ., and COREIL[*], J. Pro Tem.
JOSEPH E. COREIL, Judge Pro Tem.
Plaintiffs, Barbara Thibodeaux and Herbert Thibodeaux, sued defendant, Winn-Dixie of Louisiana, Inc., to recover damages sustained when Barbara fell in a Winn-Dixie store on July 15, 1988. A bench trial was held on March 7 & 8, 1991. The trial court awarded $20,000 for past pain and suffering and loss of consortium; $7,500 for future pain and suffering; $3,237.89 for past loss of wages; $7,876.96 for future loss of wages; $5,876 for past medical expenses; and $5,500 for future medicals. Defendant appeals. We affirm.
Plaintiff, at age 32, was shopping for groceries at a Winn-Dixie store in Eunice, Louisiana. Seeking a certain brand name cereal, she walked the length of the aisle in the cereal section. Somehow, plaintiff became tangled in an empty box and fell to the floor, landing on her knees. Plaintiff sustained contusions to her knees and was initially diagnosed with cervical lumbar strain. She began experiencing symptoms associated with a cervical disc problem and was eventually diagnosed with having two ruptured discs which will eventually require surgery.

DISCUSSION
When a customer proves that a foreign substance or object on a store's floor presented an unreasonable risk of injury which caused a damaging fall, the store must exculpate itself from a presumption of negligence. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685, 686 (La.1984); Kimble v. Wal-Mart Stores, Inc., 539 So.2d 1212 (La.1989).
For cases tried after July 18, 1988, La. R.S. 9:2800.6 provides for merchants' liability[1]:
"§ 2800.6. Liability of a merchant for injuries sustained by a person while on the premises of the merchant.
"A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
"B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
"C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
"D. `Merchant' means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business."

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court committed manifest error in failing to cast *675 plaintiff with a significant degree of comparative fault.
In its reasons for judgment, the trial court concluded: "Any negligence on the part of plaintiff was so minimal as not to be cognizable at law." After a thorough review of the record, we find that the trial court was not manifestly erroneous in its conclusion.

ASSIGNMENT OF ERROR NO. 2
Winn-Dixie contends that the trial court committed error in casting it with liability, but failing to find the existence of a hazard on the premises. On this point, Winn-Dixie's position is without merit. The testimony and photographs clearly prove a box was left by a Winn-Dixie employee and was protruding into the aisle, partially hidden from the view of the plaintiff. There is no doubt this created a hazard for the unsuspecting shopper. See Thompson v. TG & Y Stores Co., 448 So.2d 895 (La.App. 3 Cir.1984); Arch v. Great Atlantic and Pacific Tea Co., 477 So.2d 896 (La.App. 4 Cir.1985).
Winn-Dixie's store manager, Alton Stanford, testified that he left the empty potato chip box on the floor when he was called to the front. He could not remember what he was called for or how long he had left the box there. He stated that while there is not a store policy pertaining to empty boxes in the aisle, they always do try to keep them out of the aisles.
Plaintiff testified that when she walked down the aisle the only thing she saw was the green cart with the boxes on top of it. She was walking sideways looking for a specific brand of cereal, walked around the green cart, and then became tangled in the empty box. She testified that she never saw the box laying behind the green cart which was loaded with boxes.
Plaintiff's two daughters testified that they were both following plaintiff, pushing the shopping cart. Neither one testified that they could see the box, while admitting that they did see the green cart loaded with the boxes. It is evident that the empty box was somewhat camouflaged by the green cart as it was loaded with identical boxes. This box was a premises hazard created by Winn-Dixie and, under the circumstances, created an unreasonable risk of harm to customers.

ASSIGNMENT OF ERROR NO. 3
Winn-Dixie contends that the trial court erred in awarding damages resulting from the Winn-Dixie accident other than for temporary injury to plaintiff's knees. Winn-Dixie contends that there was no appreciable difference in plaintiff's condition after the fall as compared to before. Basically, the defendant contends that the awarded damages were excessive.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. Aucoin v. State Farm Mutual Auto Ins. Co., 505 So.2d 993 (La.App. 3 Cir.1987); Richard v. Walgreen's Louisiana Company, 476 So.2d 1150 (La.App. 3 Cir.1985). It is well settled in our jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Where a defendant's negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La.1980).

PRIOR MEDICAL HISTORY
Plaintiff was involved in an automobile accident in August of 1975. She visited Dr. Tom Lahaye with complaints of pain between her shoulder blades and left side of her neck. Dr. Lahaye prescribed a tranquilizer for her at the time. In December of 1982, plaintiff was again involved in an automobile accident, and was transported by an ambulance to a hospital, complaining of pain in her right hip and neck. By February of 1983, she was complaining to Dr. Lahaye of headaches that radiated to her shoulders. These complaints eventually dissipated.
On January 11, 1988, plaintiff slipped on a button while at work at the Jantzen plant and fell on her buttocks and hip, and her right shoulder struck a table. X-rays taken at Dr. Lahaye's office on that day were *676 negative. She saw Dr. Lahaye again on January 13, complaining of pain in the right shoulder and right rib cage. She was taking pain killers and muscle relaxants. Dr. Lahaye did not suspect any kind of disc problem but referred her to an orthopedic surgeon.
She visited the Evangeline Orthopedic Clinic on January 22, 1988, with complaints of pain in her right hip and shoulder and in the lower back and neck, numbness in the right arm, and tingling in the right hand. Dr. Frank Anders, an orthopedic surgeon on staff, felt she had a cervical and lumbar strain which should resolve with conservative management in four to six weeks. He prescribed physical therapy, a TENS unit and medication. Dr. Douglas McKay, also an orthopedic surgeon at the clinic, examined her in February of 1988. She was still having the pains described above. He ordered an x-ray of the cervical lumbar areas of the spine, which were normal. In March, an MRI of the cervical and lumbar regions showed nothing abnormal. Also, a CAT scan revealed no abnormalities. With continuing complaints she visited Dr. McKay again in April of 1988, who referred her to Dr. Robert Rivet, a Lafayette neurosurgeon.
She saw Dr. Rivet in April, 1988; her complaints now included headaches. Suspecting a cervical disc or lumbar disc, he ordered a cervical/lumbar myelogram, which appeared normal. A CAT scan also performed appeared normal. His diagnosis was a myofascial type injury. He then referred her to Dr. Norman E. Anseman, Jr., a rehabilitation specialist.
Also during March, she visited Dr. Michael Heard, an orthopedic surgeon. Dr. Heard conducted a physical examination and found she had full range motion about her neck; tenderness in the midline on the right side; and some stiffness when bending forward. Dr. Heard felt that the plaintiff had a post-traumatic neck and low back pain complaints with radicular componentsmeaning pain into the arms and the legs. He found no objective evidence of injury, but recommended additional testing. He did not see her again until after the Winn-Dixie fall.
Dr. Anseman examined plaintiff on April 19, 1988. That neurological exam was normal; she had some tenderness along the midline of her neck between the C5 and C7, but no tenderness of the muscles up and down the neck. She returned later that month, and he outlined an outpatient therapy program for her. Also on this visit, plaintiff claimed pain in the temporomandibular joint. Dr. Anseman asked her to see a dentist who specializes in TMJ disorder. He did note that TMJ does have a direct effect on the posterior neck muscles. He prescribed muscle relaxants, anti-inflammatory medication, and medicine to help her sleep. Plaintiff missed her next several appointments, and Dr. Anseman did not see her again until November of 1988, after the fall.
Also in April of that year, plaintiff saw Dr. Robert Martinez, a neurologist. He found some spasms in her neck and back on the right side but did not find any other objective abnormalities. He recommended to Dr. Rivet that conservative treatment and physical therapy and medication was all that was required. He saw her again after the Winn-Dixie fall.
In May of 1988, she visited Dr. Gerald L. Napoli, a chiropractor. Her subjective symptoms were the same, with pain now in her right ear. Dr. Napoli reviewed her x-rays and gave her a mild adjustment. He treated her two to three times per week from May up until the Winn-Dixie fall.

POST-WINN-DIXIE FALL MEDICAL HISTORY
Plaintiff visited Dr. Rivet in September of 1988, complaining that her headaches were getting worse. Dr. Rivet treated her with anesthetic injections. Her headaches reoccurred as soon as the drugs wore off. He eventually performed an occipital neurectomy in November of 1988, to relieve the pain.[2] It was his opinion that the *677 Winn-Dixie fall contributed to, or aggravated, the plaintiff's condition. According to Dr. Rivet, plaintiff was experiencing headaches caused by occipital tenderness exacerbated by the fall. He testified that on her April, 1988 visit, his records were void of any reference to finding the occipital tenderness then. Plaintiff's headaches were relieved by the surgery, until January 16, 1989. On this visit to Dr. Rivet her headaches were back but were no longer occipital-type headaches, but more related to the neck.
Dr. Napoli, plaintiff's chiropractor, agreed that plaintiff's headaches changed from occipital to more of a lower cervical thorasic problem, creating stress and tension after her neurectomy in November of 1988.
Dr. Rivet acknowledged that her symptoms could have been consistent with some type of disc pathology. He ordered repeat myelograms and scans, which were performed in April, 1989. After he reviewed the studies, he advised her to see Dr. John Jackson.
Plaintiff saw Dr. Jackson, but not until March 22, 1990. Dr. Jackson examined the plaintiff and reviewed the two sets of cervical myelograms. He noted a slight bulging disc at C4-5, C5-6 and C6-7 on the cervical myelogram taken after the Winn-Dixie fall. The cervical myelogram taken prior to the fall was normal. Based upon the bulges he noted on the 1989 myelogram, he ordered a cervical discogram, followed by a CAT scan to determine whether or not her symptoms were coming from those discs. It was his conclusion that she had two ruptured discs at C4 and C5-6. It is his recommendation that if her pain reaches the point that she cannot tolerate it, then he would perform surgery, remove the discs, and perform a fusion. Dr. Jackson testified in deposition that the second accident at Winn-Dixie caused her disc problems.
The trial court awarded damages for future surgical costs; therefore, it obviously accepted the testimony of Dr. Jackson. Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Our review of the record reveals that the plaintiff received exacerbating injuries. Accordingly, we do not find that the trial court abused its "much discretion" in finding that the plaintiff was entitled to those damages for her injuries.

PLAINTIFF'S APPEAL
Plaintiff answers the appeal, contending that the trial court determined that plaintiff's condition was worsened by one-third of her pre-accident state but awarded her only one-fourth of those damages. This assessment was outlined in the judge's written reasons for judgment, which are attached hereto. Plaintiff is appealing from those reasons. Written reasons for judgment do not form part of the judgment and do not constitute final judgment from which the appeal can be taken. Ford, Bacon & Davis Construction Co. v. Doga, 365 So.2d 1143 (La.App. 3 Cir.1978). A final judgment can be inconsistent with written reasons. If a disparity exists between the judgment and the written reasons for judgment, the final judgment is definitive. See Thurman v. Thurman, 521 So.2d 579 (La.App. 1 Cir.1988). As to plaintiff's contention that the trial court erred in reducing the damages by one-fourth, we reiterate the standards of review found in Coco, supra, and find sufficient evidence with which to conclude that the trial court was not manifestly erroneous.

CONCLUSION
We hold that the trial court correctly held that plaintiff presented a prima facie case that she tripped and fell on a foreign object located on the floor of the Winn-Dixie Store. This created a presumption of negligence on the part of the store. Winn-Dixie did not present evidence to exculpate itself from this presumption.
We hold that the damage awards made by the trial court properly fall within its discretion. The trial court's findings of negligence on the part of Winn-Dixie are *678 affirmed. Costs of this appeal are taxed to defendant.
AFFIRMED.
 APPENDIX
 Twenty-seventh Judicial District
 of louisiana
H. GARLAND PAVY Opelousas P.O. BOX 348
JUDGE XXX-XXX-XXXX
 70571
 March 11, 1991
Mr. M. Terrance Hoychick
Attorney at Law
P.O. Box 1132
Eunice, Louisiana 70535
Mr. David Calogero
Attorney at Law
Suite 400, Garden Square
100 E. Vermilion Street
Lafayette, Louisiana 70501
Re: Barbara Thibodeaux et vir
 vs. Winn-Dixie of Louisiana, Inc.
 Docket No. 88-2416
Gentlemen:
I conclude as follows, to-wit:
1) That defendant, Winn-Dixie, was negligent in leaving the box in the aisle such that it
was partially hidden from view, and that its negligence was the sole cause of plaintiff's
accident and consequent injuries.
2) Any negligence on the part of plaintiff was so minimal as not to be cognizable at law.
3) That, at the time of the accident herein, plaintiff already had in place both a low back
problem and one involving the cervical back, right shoulder, and right arm.
4) That the lumbar spine condition was only negligibly exaggerated and returned to its
pre-accident condition within a few months.
5) That plaintiff's upper back, shoulder and arm problem was substantial before the
accident; that the Winn-Dixie accident aggravated the previous condition, not as much as
plaintiff claims, but more than defendant concedes.
Mr. M. Terrance Hoychick
Mr. David Calogero
March 11, 1991
Page Two
6) That the degree of aggravation must be determined at least in part by the types of
injuries sustained, that is, that in the Jantzen accident, plaintiff hit her right shoulder and
upper torso on a desk before hitting the floor or ground, and that in the Winn-Dixie
accident, plaintiff only fell to her knees.
7) That although one doctor suggested a functional overlay in plaintiff's case, another
gave an opinion to the contrary; the plaintiff was not a malingerer in the sense of one
who intentionally feigns or exaggerates the condition, but she may have unknowingly
overemphasized the condition, a situation not uncommon among patients who have
substantial, lingering and persistent pain such as plaintiff experienced.
8) That the argument concerning a negative myelogram before the Winn-Dixie accident
and a positive one after is persuasive but not compelling; it is well known that these
conditions progress with time, and this consideration is especially strong in view of the
great constrast between the injury sustained by plaintiff at Jantzen's and that at Winn-Dixie.
*679
9) Although there might have been a question as to whether plaintiff was totally and
permanently disabled in the worker's compensation sense before the Winn-Dixie accident,
the aggravation of the accident totally and permanently disabled plaintiff in the tort
sense, and she is entitled to collect from Winn-Dixie the proportion of the Jantzen salary
that her aggravation bears to the whole of the complete and indefinite disability effected
by the two injuries; that the aggravation was to the extent of one-third of what it was
immediately prior to the accident; that plaintiff is entitled to one-fourth of all damages
sustained by her after the Winn-Dixie accident; that if there is any overlap in wage loss
or medical expenses, the collateral source rule prohibits the tort feasor herein from
offsetting because of that duplication.
10) That damages are fixed as follows, to-wit:
 a) Past pain and suffering, loss of consortium, and disabilities
 other than earning power $20,000
Mr. M. Terrance Hoychick
Mr. David Calogero
March 11, 1991
Page Three
 b) Future pain and suffering, etc. $ 7,500
 c) Past loss of wages (being ¼ of salary paid by Jantzen, but (To be calculated
 computed from date of Winn-Dixie accident to trial) by plaintiff's
 attorney)
 d) Future loss of wages (being ¼ of wages being paid at time (To be calculated
 of Jantzen accident from trial to four years forward) by plaintiff's
 attorney)
 e) Past medical (being ¼ of medical expenses from date of 5,876
 Winn-Dixie accident to trial)
 f) Future medical (being ¼ of $22,000 for operation and 5,500
 followup expenses)
 g) Loss of consortium by husband 5,000
Plaintiff's counsel will draft judgment, submit for signature, and furnish copy to opposing
counsel who will have ten days from receipt to make objection that the judgment does not
conform to this decision.
 Yours truly,
 (s) H. Garland Pavy
 H. Garland Pavy, Judge
HGP/jf
NOTES
[*] Honorable Joseph E. Coreil, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] This statute was again amended and rewritten Cby Acts 1990, # 1025 and provides in § 2 that it "shall become effective September 1, 1990" and the provisions "apply only to causes of action which arise on or after that date."
[2] Neurectomy is the excision of a segment of a nerve. In plaintiff's case, the nerve was located in the back of her head.