657 So.2d 491 (1995)
Hilda DANZEY, Plaintiff-Appellee,
v.
EVERGREEN PRESBYTERIAN MINISTRIES, Defendant-Appellant.
No. 95-167.
Court of Appeal of Louisiana, Third Circuit.
June 7, 1995.
*493 Vincent Ross Cicardo, Alexandria, for Hilda Danzey.
Walter S. Salley, Shreveport, for Evergreen Presbyterian Ministries.
Kenneth A. Doggett, pro se.
Before KNOLL and SULLIVAN, JJ. and BROUILLETTE[1], J. Pro Tem.
SULLIVAN, Judge.
Plaintiff, Hilda Danzey, was injured on June 5, 1991 as the result of an altercation with a minor resident of a group home which she managed. The group home is owned by Danzey's employer, Evergreen Presbyterian Ministries. She continued to work until November 27, 1991 at which point her treating chiropractor, Dr. Robert Boisvert, was of the opinion that Danzey was disabled indefinitely from performing her job. Evergreen Presbyterian Ministries' insurer, CIGNA Insurance Company, paid indemnity benefits for the period from November 27, 1991 until April 24, 1992. The cessation of benefits was based on the opinion of Dr. John Patton, her treating neurosurgeon. Dr. Patton concluded, after three and one-half (3½) months of treating her, that she had reached maximum medical improvement and was capable of returning to work.
Thereafter, Danzey was evaluated by Dr. Bruce Razza, a New Orleans orthopedic surgeon. After she underwent numerous diagnostic tests, Dr. Razza recommended neck and low back surgery. When CIGNA declined to approve these surgical procedures, Danzey filed this disputed claim for compensation with the Office of Worker's Compensation (OWC) on November 11, 1992.
Trial of this matter was held on June 13, 1994. Danzey and Kathy Thomas, the Division Director for Evergreen Presbyterian Ministries, were the only witnesses to testify other than by deposition. The OWC hearing officer left the record open for the taking of the deposition of Cheryl Rankin, CIGNA's adjuster, and for the results of a disability evaluation to be performed at a later date. On August 19, 1994, the hearing officer rendered and signed a judgment and written reasons therefor. He ordered that Danzey be paid all benefits which were denied since April 24, 1992 along with twelve (12) percent penalties plus interest on each payment from its due date. The hearing officer also awarded Danzey $2,500.00 in attorney's fees for defendants' failure to "reasonably controvert" Danzey's entitlement to benefits.
Defendants appeal and assign four errors to the OWC hearing officer's judgment, to-wit:
1) Affording greater weight to the testimony of Dr. Bruce Razza and Dr. Stephen Flood as opposed to the testimony of Dr. John Patton and the relatively negative diagnostic test results;
2) Finding that Danzey's carpal tunnel syndrome was causally related to the accident and that carpal tunnel release surgery was warranted;
3) Finding that the neck and low back surgeries recommended by Dr. Bruce Razza were necessary; and
4) Awarding penalties and attorney's fees.
Our review of the OWC judgment indicates that the hearing officer did not order that Danzey undergo or that the defendants pay for either carpal tunnel release surgery or the neck and low back surgeries recommended by Dr. Razza. The reasons for judgment are equivocal at best as to the necessity of surgery. In his reasons for judgment, the hearing officer only impliedly concludes that the neck and low back surgeries recommended by Dr. Razza are necessary. He does not order that these procedures are to take place. Furthermore, he concludes that "defendant has failed to produce any evidence to rebut the causal connexity" of the *494 carpal tunnel condition to the accident. He makes this determination without initially explaining the particular causal connexity. Again, the hearing officer did not specifically state that carpal tunnel release surgery was necessary nor did he order that it take place.
It is well settled that an appeal is taken from a written final judgment, not the trial court's reasons for judgment, which do not form part of the judgment. Thibodeaux v. Winn-Dixie of Louisiana, 608 So.2d 673 (La.App. 3 Cir.1992). In the present case, the written judgment is silent on the issue of neck, low back and carpal tunnel surgery. "If a disparity exists between the judgment and the written reasons for judgment, the final judgment is definitive." Id. at 677. The only disparity, if any, exists between the written reason's implication that neck and low back surgery is necessary and the final written judgment's complete silence on the issue. Under these circumstances, the language of the final judgment prevails. Due to its silence, the judgment must be construed as a rejection of the proposed surgeries.
It is clear that assignments of error numbers two (2) and three (3) result from the equivocal statements concerning surgery in the hearing officer's reasons for judgment. We will not address the merits of these assignments of error, except to state that we affirm the hearing officer's rejection (in the judgment) of Danzey's claim that the recommended surgeries are necessary. After reviewing the entirety of the evidence, discussed infra, we conclude that the requested surgeries are not warranted under the circumstances.
The only issues remaining for our resolution are those presented by assignments one and four. For the following reasons, we affirm the OWC hearing officer's judgment.

FACTS AND MEDICAL EVIDENCE
At the time of her accident, Danzey had been employed by Evergreen Presbyterian Ministries for approximately six and one-half years. She was the manager of the group home for retarded and disabled individuals, having worked in that capacity for nearly one (1) year. Her duties ranged from the purchase of groceries for the residents to the design and implementation of a resident's living program.
On the date at issue, Danzey left the home in a van to retrieve a runaway female adolescent resident of the home. When she found and approached the girl, the girl refused to go with Danzey and kicked Danzey in the groin area. Danzey fell back to the concrete sidewalk, and the girl kicked and hit her again. After a while, she calmed the girl down and convinced her to enter the van and return to the group home. While traveling back to the home the girl threw a baseball at Danzey, which hit her at the base of her neck.
The next day, Danzey complained about neck and shoulder pain to Kathy Thomas, the Division Director for Evergreen Presbyterian Ministries. She began seeing Dr. Boisvert, her chiropractor for relief of her pain. However, she continued to work until she was discharged by Thomas on November 26, 1991 due to problems in the home with missing money and missing controlled dangerous substances.
Dr. Boisvert referred her to Dr. Robert Rush, a family physician, for purposes of prescribing pain and anti-inflammatory medication. When Danzey's condition did not improve, Dr. Boisvert referred her to Dr. Patton, a neurosurgeon. She initially saw Dr. Patton on January 7, 1992. He diagnosed a probable cervical musculoskeletal injury and recommended a cervical magnetic resonance imaging (MRI) test, a lumbar CT scan, an electromyogram (EMG) and nerve conduction studies (NCS).
After undergoing these tests, Danzey returned to Dr. Patton on January 30, 1992. He noted that the radiologist found no significant findings on the MRI and CT scan. He also noted a possibly abnormal C6-7 disc.
The EMG/NCS was performed by Dr. Naalbandian, a neurologist. He detected distal latency in both upper extremities, which he opined indicated the presence of carpal tunnel syndrome. Dr. Patton reviewed these results and examined Danzey a third time on February 27, 1992. He disagreed with Dr. Naalbandian because her distal latency response *495 reading was 4.6 milliseconds (normal range: 2.8 to 4.3 milliseconds) and she exhibited no defining complaints or symptoms on examination. Dr. Patton also determined that Danzey had good neck range of motion and her straight leg raising test was normal to 90 degrees. He diagnosed cervical and lumbar musculoskeletal injuries and recommended that she enroll in an interdisciplinary comprehensive spine program (CSP).
Danzey enrolled in the CSP on March 11, 1992 after the CSP medical team was sufficiently satisfied that she did not have a herniated disc. On initial enrollment, her medical evaluations concluded that she suffered cervical myofascial pain syndrome and lumbar facet syndrome. No carpal tunnel syndrome was detected. Through the detection of seven (7) of eight (8) Waddell's signs, Dr. M. Lawrence Drerup concluded that Danzey was engaging in symptom magnification. Dr. James Quillin, a psychologist, administered the Minnesota Multiphasic Personality Index. The results were abnormal, indicating dysfunctional pain syndrome with hysterical personality features and probable psychological overlay.
Danzey participated in the CSP on nine days between March 16, 1992 and April 8, 1992. Her sessions were characterized by slow progress and bitter complaints of pain in reaction to minimal exercise. On the latter date, she refused to undergo a functional capacity examination and was discharged from the CSP.
She returned to Dr. Patton on April 9, 1992. His examination revealed normal motor strength in all four extremities and that her pain complaints were inconsistent with any peripheral nerve distribution. Dr. Patton detected no neurological deficits and released her to return to work. Alternatively, he recommended that she be evaluated by Dr. Phillip Osborne, a physical medicine specialist, for purposes of determining a disability percentage rating. She refused to undergo the disability evaluation. When CIGNA received Dr. Patton's examination report, it stopped paying Danzey's indemnity benefits.
On June 11, 1992, Danzey was first examined by Dr. Razza, an orthopedic surgeon. He reviewed the results of the prior diagnostic tests. On examination, Dr. Razza found restricted neck range of motion and cervical tenderness. He also noted questionable Tinel's and Phalen's signs, which were suggestive of carpal tunnel syndrome. He recommended a cervical CT scan with a post-CT discogram, a lumbar MRI, and an EMG of the lower extremities. The tests were all performed on September 1, 1992. The cervical CT scan revealed a minor bulge at C5-6. The post-CT discogram was positive for pain at C5-6 and strongly positive at C6-7. The lumbar MRI revealed bulging discs at L4-5 and L5-S1. The EMG resulted in normal nerve conduction velocities and distal latencies with possible pathology involving L5 and the L4 nerve root.
Danzey was seen by Dr. Razza again on October 13, 1992. Based on the results of the tests performed and her continued complaints of pain, Dr. Razza recommended a cervical anterior fusion with internal fixation and a lumbar open discectomy or automated percutaneous discectomy. He opined that she was disabled from returning to work. The insurer, CIGNA, denied his request to perform surgery.
On November 11, 1992, Danzey filed a disputed claim for compensation with the OWC.
On May 3, 1993, Danzey was evaluated by Dr. Robert Po, an orthopedic surgeon, for purposes of determining her eligibility for social security disability benefits. Dr. Po diagnosed her with a chronic C5-6 and C6-7 neck strain and L4-5 lumbar strain. He limited her to maximum lifting of ten (10) pounds both occasionally and frequently. He also noted the presence of three (3) of five (5) Waddell's signs, indicating a "strong tendency for symptom magnification." The Social Security Administration determined that Danzey was eligible to receive disability benefits.
The OWC requested that Dr. Stephen Flood, an orthopedic surgeon, perform an independent medical examination pursuant to its utilization review procedure. He did so on December 20, 1993. He recommended bilateral carpal tunnel release surgery, but he did not recommend either neck or low *496 back surgery. Dr. Flood disagreed with Dr. Razza on the necessity of neck and low back surgery, citing the absence of necessary objective criteria for such operations. However, he opined that Danzey was 100% disabled from returning to work.
The OWC hearing was held on June 13, 1994. Danzey testified that, after the altercation with the minor resident, her body hurt all over from the beating. She stated that she continued to work out of necessity because she was afraid of being fired. She quit the CSP because she could not tolerate the constant pain. According to Danzey, her pain is constant and has not changed since the accident. She described it as originating in the back of her head and traveling down both shoulders and arms to the hands. Also, she has burning pain and numbness in the low back below her waist which radiates into and down her left leg.
Kathy Thomas testified that Danzey's job entailed some physical functions such as shopping, carrying, and helping with the youth residents. She stated that the director was not required to do the shopping but could do so if she wanted to. She stated further that the only time plaintiff complained of pain to her was the day after the accident.
After the testimony was taken, the parties stipulated that Danzey was not forced to work against her will after the accident. As previously mentioned, the hearing officer took the matter under advisement and left the record open for the taking of the CIGNA adjuster's deposition and a disability evaluation to be performed by Dr. Osborne.
In conjunction with the disability evaluation, a psychological profile was performed by Dr. Thomas Staats, Ph.D., on June 28, 1994. Dr. Staats performed several tests, including the Minnesota Multiphasic Personality Inventory. This test revealed Danzey is excessively socially self-conscious and has psychosomatic and somatoform disorders with extreme hysteroidal features. Dr. Staats concluded that she exhibited physical symptom exaggeration, and that it was seventy-five (75) percent likely that Danzey has a functional overlay. He characterized Danzey as a "neurotic heavy somatizer who overutilizes psychological defense mechanisms."
Danzey also underwent the physical disability evaluation on June 28, 1994. Dr. Osborne noted numerous inconsistencies in her physical performance on examination. For instance, when examining her neck, she would not move it greater than ten (10) degrees in any direction. However, during the remainder of the examination, he observed her moving her neck much more than ten (10) degrees. Additionally, her straight leg raising test, while sitting, was negative to ninety (90) degrees in both legs. In a supine position, she reported pain bilaterally at ten (10) degrees. Dr. Osborne described this result as "biomechanically impossible for a person who can walk upright." He detected six (6) of eight (8) Waddell's signs and noted that a result of three (3) or more is "markedly indicative of exaggeration or extreme anxiety on the patient's part." Dr. Osborne concluded that the evidence of symptom magnification was "rather massive."
The deposition of Cheryl Rankin, CIGNA's adjuster, was taken on July 18, 1994. She stated that, from June 5, 1991 to November 26, 1991, Danzey's file was "medical only" because she had continued to work. Danzey's first indemnity payment was sent on February 28, 1992, and she was also sent a lump sum payment on March 16, 1992 for the period from November 27, 1991 to February 28, 1992. Rankin justified the delay by stating that CIGNA did not receive Dr. Boisvert's notice of Danzey's disability until February 3, 1992. Danzey was paid through April 24, 1992, when CIGNA was notified by Dr. Patton that Danzey could return to work. Rankin stated that she was unaware that Danzey continued to be treated thereafter by Dr. Rush. However, CIGNA paid him $305.00 on July 6, 1992. At the time that Danzey was seen by Dr. Razza, Rankin was no longer handling the claim and had no personal knowledge that CIGNA approved of the evaluations by Dr. Razza. Thereafter, she resumed supervision of Danzey's case. Despite the contrary subsequent opinions of Dr. Razza and Dr. Flood, Rankin continued to deny Danzey indemnity benefits based *497 upon Dr. Patton's April 1992 opinion that she could return to work.
Danzey was once again evaluated by Dr. Patton on July 26, 1994. He found no straight leg raising pain and no objective evidence of carpal tunnel syndrome. He diagnosed her condition as chronic pain and opined that surgery was not recommended based solely on an abnormal discogram. He concluded that Danzey is "poorly motivated to get well enough to return to work" and that "surgery will not improve her condition significantly."

OPINION

Assignment of Error Number One
By this assignment of error, defendants assert that the hearing officer erred in granting greater weight to the testimony of Dr. Razza and Dr. Flood as opposed to the testimony of Dr. Patton and the objective diagnostic test results. The hearing officer did so by relying on the jurisprudential rule of Campbell v. Luke Construction Co., 465 So.2d 688 (La.1985) that positive findings should be afforded greater weight than negative findings as to the existence or nonexistence of a particular medical condition. Additionally, he relied on the case of Mazoch v. Employer's Casualty Co., 514 So.2d 1184 (La. App. 1 Cir.1987), writ denied, 517 So.2d 812 (La.1988) for the proposition that the testimony of a treating physician, who does not treat the claimant most contemporaneous to the accident but does perform diagnostic tests which reveal positive findings, should be given greater weight than the testimony of other treating physicians who did not conduct the diagnostic tests which may have revealed the positive finding. The hearing officer concluded that "Louisiana jurisprudence dictates that [Dr. Razza's] testimony be given greater weight than the other treating physicians."
The jurisprudential tenets relied upon by the hearing officer in giving greater weight to Dr. Razza and Dr. Flood are not absolute, rigid rules to be mechanistically applied in every case in which the medical evidence and testimony conflicts. If this were the law, then every case in which a positive medical finding is made would result in victory for the claimant. The jurisprudential rules are not intended to operate in this manner. Instead, the rules are evidentiary in nature and create an evidentiary presumption which can be rebutted by the presentation of sufficient countervailing evidence of negative medical findings.
Although the hearing officer misapplied the law applicable to cases in which the medical evidence conflicts, we nevertheless conclude that his decision to credit the testimony of Dr. Razza and Dr. Flood was not clearly erroneous. The medical evidence and testimony was clearly in conflict. The hearing officer was faced with two reasonable and permissible views of the evidence, the views espoused by Drs. Razza and Flood and the view of Dr. Patton. He chose to believe Dr. Razza and Dr. Flood. In doing so, he made a factual finding based on a credibility determination which, in the absence of manifest error or clear wrongness, cannot be reversed on appeal. Stobart v. State, DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). As an appellate court, we are constrained by this standard of review to the inquiry of whether the factfinder's determination was a reasonable one. Stobart, 617 So.2d at 882. After a thorough review of the record, we conclude that the hearing officer's decision to credit the testimony of Dr. Razza and Dr. Flood over that of Dr. Patton was not manifestly erroneous.

Assignment of Error Number Four
Defendants contend that the hearing officer's award of twelve (12) percent penalties pursuant to La.R.S. 23:1201(E) and attorney's fees pursuant to La.R.S. 23:1201.2 was erroneous. We find no error.
These two statutes are penal in nature and are to be strictly construed. Terro v. WMCO, Inc., 619 So.2d 639 (La.App. 3 Cir.1993). Statutory penalties are due only if the claimant's right to receive benefits has been reasonably controverted or nonpayment resulted from conditions over which the employer or insurer had no control. Poirrier v. Otis Engineering Corp., 602 So.2d 207 (La. App. 3 Cir.1992). The employee's right to *498 such benefits will be deemed "reasonably controverted" if the employer or insurer had a reasonable basis for believing that medical expenses and indemnity benefits were not due the employee. Guidry v. United Furniture Distributors, 544 So.2d 100 (La.App. 3 Cir.1989). Attorney's fees are due if the discontinuance of payments is found to be arbitrary, capricious, or without probable cause.
The factfinder's decision to award penalties and attorney's fees is essentially a question of fact which should not be reversed unless it is clearly wrong. Comeaux v. Grey Wolf Drilling, 93-1289 (La.App. 3 Cir. 5/4/94), 640 So.2d 532, writ denied, 94-1339 (La. 9/16/94), 642 So.2d 193.
The record indicates that Danzey's benefits were discontinued on April 24, 1992 on the basis of Dr. Patton's release to return to work. At that point, CIGNA's decision to terminate may have been a reasonable one. However, when subsequent objective evidence of positive medical findings which indicated a continuing disability were reported by Dr. Razza, CIGNA continued to rely on the prior negative report of Dr. Patton to decline benefits. Additionally, after Dr. Flood opined in December, 1993 that Danzey was totally disabled, CIGNA again relied on Dr. Patton's April 1992 opinion that Danzey was not disabled to deny her benefits.
It is well settled that, in the face of subsequent positive medical findings indicating the existence of a disability, the insurer cannot rely solely on a prior negative medical report to refuse to pay benefits. In this situation, the insurer is required to investigate further to determine the true nature of the claimant's condition. Tassin v. CIGNA Insurance Co., 583 So.2d 1222 (La.App. 3 Cir.1991). CIGNA took no action in this regard. Under these circumstances, we conclude that the hearing officer was not manifestly erroneous in awarding penalties and attorney's fees.

DECREE
For these reasons, the OWC hearing officer's judgment rejecting surgery and awarding penalties and attorney's fees is affirmed. Costs are assessed to Evergreen Presbyterian Ministries and CIGNA Insurance Company.
AFFIRMED.
BROUILLETTE, J. Pro Tem. dissents and assigns with written reasons.
HAROLD J. BROUILLETTE[*], Judge, Pro Tem dissenting.
I disagree with the decision of the administrative hearing officer and the majority of this court that the conduct of defendants was arbitrary, capricious or without probable cause and that the plaintiff is thereby entitled to recover penalties and attorney's fees.
The majority cites Stobart v. State, DOTD, 617 So.2d 880 (La.1993) and Rosell v. ESCO, 549 So.2d 840 (La.1989) which held that where the trier of fact is faced with two reasonable and permissible views of the evidence, a finding should not be reversed in the absence of manifest error. That well-established principle of law is applicable in this case to the administrative hearing officer's determination of disability. However, those cases did not involve a determination of arbitrary and capricious.
The majority opinion specifically recognizes that (1) the medical evidence and testimony was clearly in conflict; and (2) the administrative hearing officer was faced with two reasonable and permissible views of the medical evidence. I find it inconsistent for this court to rule on the one hand that the administrative hearing officer was faced with two reasonable and permissible views of the medical evidence and then hold that the party asserting one of those views was arbitrary and capricious.
This court, in Trudell v. State of Louisiana, Office of Risk Management, 465 So.2d 184 (La.App. 3 Cir.1985) held that the trial court's reasonable evaluations of credibility *499 in a worker's compensation case should not be disturbed even though other evaluations may be reasonable. Accordingly, the court held that there was no manifest error in the finding of disability. However, the court reversed the trial court's award of penalties and attorney's fees and recognized that "[a]n insurer should not be penalized for seeking judicial resolution of close factual issues." Trudell, 465 So.2d at 186. More recent cases in this court have recognized that although the Worker's Compensation Act is to be liberally construed in favor of the injured employee to effectuate the humane policies it reflects, the statutes imposing liability for penalties and attorney's fees are penal in nature and should be strictly construed to prevent employers from being penalized for taking close factual questions to court or for relying in good faith on valid defenses. Gagnard v. Venture Marketing Corp., 94-1655 (La.App. 3 Cir. 10/5/94); 643 So.2d 460; Lewis v. Malone & Hyde, Inc., 626 So.2d 531 (La.App. 3 Cir.1993); Landry v. Central Industries, Inc., 592 So.2d 478 (La.App. 3 Cir. 1991), writ denied, 593 So.2d 381 (La.1992).
I respectfully dissent from the decision of the majority insofar as it affirms the award of penalties and attorney's fees.
NOTES
[1] Judge Harold Brouillett of the Twelfth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[*] Honorable Harold J. Brouillette participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.