¡iDOUCET, Chief Judge.
In this worker’s compensation ease claimant, Ashton J. Royer, proceeding in forma pauperis, appeals the decision by a worker’s compensation hearing officer denying compensation benefits claimant sought from his employer, Western American Specialties Transportation (WAST) in connection with claimant’s incident of syncope, which resulted from an episode of ventricular tachycardia, and his subsequent coronary by-pass surgery and resulting disability. We affirm the decision of the hearing officer.
FACTS
Claimant, Ashton J. Royer, was employed by defendant, WAST, as a “hot-shot” truck driver. As such, Mr. Royer picked up and delivered oil field related tools, equipment, and supplies for the various companies serviced by WAST. Claimant drove his own 1990 pickup truck, which he had leased to his employer.
|2On the afternoon of May 3, 1994, Mr. Royer received a call from Haliburton, one of WAST’s customers, requesting claimant transport some equipment from Haliburton’s yard in Broussard to Pelican Island, Texas. Mr. Royer left Broussard at approximately 5:00 p.m. and arrived at Pelican at approximately 9:00 p.m. Upon arrival, Mr. Royer was informed that some implements at Pelican Island had to be transported to Harbor Island, near Corpus Christi. The equipment for Pelican was unloaded, the implements for Harbor Island loaded, and Mr. Royer continued on to Harbor Island, arriving at about 2:00 a.m. May 4,1994.
The implements for delivery to Harbor Island consisted of four pieces of equipment. Two of the pieces weighed approximately 200 pounds each, while the remaining pieces *74 weighed about 600 pounds each. Mr. Royer and a fork lift operator successfully offloaded the two smaller pieces onto the fork lift, and while the fork lift operator went to deposit the implements, Mr. Royer attempted to roll one of the larger pieces onto some chain in preparation to offload it. During this activity, Mr. Royer collapsed, an ambulance was summoned, CPR was administered, and he was rushed to a local hospital, Coastal Bend Hospital, with a suspected myocardial infarction or heart attack.
At Coastal Bend, it was determined that Mr. Royer had suffered an episode of ventricular tachycardia, (v-tach), a rapid ineffectual beating of the heart, and not a myocardial infarction, as previously suspected. This episode of v-tach resulted in insufficient blood flow to his brain, which in turn caused him to pass out (syncope). He was stabilized with medication (lidocaine) and transferred to Spohn Medical Center (Spohn) in Corpus Christi, Texas, so that the cause of his v-tach could be determined.
Laboratory tests (specifically, CPK blood levels) at Spohn ruled out a myocardial infarction as the cause of Mr. Royer’s problem. Subsequently, he underwent cardiac cathet-erization which revealed 100% blockage of his right coronary ^artery and 90% blockage of his left anterior descending artery. A few days later, on May 11, 1994, a double bypass procedure was performed with PCD patches being placed on the heart as a precaution, in the event of subsequent episodes of arrhythmia.
Defendant, WAST, denied Mr. Royer’s claim for compensation based upon its contention that, at the time of his syncope, claimant was not engaged in extraordinary and/or unusual activities when compared to the duties of the average “hot-shot” driver.
In her written judgment, the Office of Worker’s Compensation hearing officer who heard Mr. Royer’s claim stated that claimant had “... failed to sustain the burden of proving by clear and convincing evidence that the disability of which he complains was ... caused by physical work stress that was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in his occupation” and that “... a preexisting condition was the major cause of the disability suffered by this claimant.”
Claimant appeals arguing the hearing officer erred in both of the conclusions reached above and in denying Mr. Royer’s claim for penalties and attorney’s fees for defendant’s arbitrary and capricious handling of this claim.
LAW AND DISCUSSION
At first blush, it would appear that the statute at issue in this case is La.R.S. 23:1021(7)(e). That statute provides as follows:
(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
UThe record leaves no doubt that Mr. Roy-er suffered from two very serious coronary occlusions. These occlusions required double coronary bypass surgery. The record further reveals that claimant’s coronary occlusions were only diagnosed after the episode of syncope which occurred on the job. Further muddying the waters are the hearing officer’s written reasons for judgment. The pertinent part of those reasons read as follows:
... Dr. Ball testified that ventricular tachycardia is not treated by bypass surgery. Dr. John Mickey, the cardiologist who next treated Royer also testified that Royer did not have a heart attack on May 4, 1994. He said that Royer would have needed bypass surgery regardless of the event of ventricular tachycardia. At the behest of the Office of Workers’ Compen *75 sation an independent medical examination was performed by Dr. Craig Walker. Dr. Walker agreed that Royer did not have a heart attack on the night in question. Furthermore, Dr. Walker testified that once Royer’s ventricular tachycardia was stabilized, there was nothing further that needed to be done to treat that condition.
The disability of which Royer complains results from the residual effects of the bypass surgery, not the single isolated episode of ventricular tachycardia. The Court finds that the by-pass was not the result of anything extraordinary and unusual in comparison to the stress or exertion. experienced by the average employee In Royer’s same occupation. Additionally, the Court does not find that the episode of ventricular tachycardia resulted in any disability and therefore, does not make a ruling as to whether or not this episode was caused by an incident at work. However, the Court finds that since the tachycardia occurred while at work, the defendant is responsible for the bills Incurred up to the point that this condition resolved. The medical bills Incurred as a result of the bypass surgery and the attendant care, thereafter, are not the responsibility of this defendant for the bypass surgery was not the result of a work-related incident. For these reasons, the Comí finds that Royer has failed to sustain the requisite burden of proving that the incident that occurred on May 4, 1994, resulted in a compensable work-related disability.
First, the hearing officer found that the episode of ventricular tachycardia did not result in any disability. However, she then states: “... that since the tachycardia occurred while at work, the defendant is responsible for the bills incurred up to the point that this condition resolved.” These two findings are irreconcilable.
Appellant argues that since, in her reasons for judgment, the hearing office “awarded” medical benefits for claimant’s bout of syncope, that she must have [..¡concluded that at the time claimant experienced his tachycardia, he was engaged in some extraordinary and unusual activity. He then makes a further assumption, that since claimant’s syncope was ultimately caused by his coronary occlusions, any treatment needed to treat the latter condition and any consequence of either the treatment or the disease, must be compensable. We find appellant’s reasoning flawed.
In Danzey v. Evergreen Presbyterian Ministries, 95-167 pg. 3 (La.App. 3 Cir. 6/7/95); 657 So.2d 491, 494, this court stated as follows:
It is well settled that an appeal is taken from a written final judgment, not the trial court’s reasons for judgment, which do not form part of the judgment. Thibodeaux v. Winn-Dixie of Louisiana, 608 So.2d 673 (La.App. 3 Cir.1992).
While the case sub judice is an appeal of an administrative hearing decision and not of a district (trial) court judgment the rational is still the same.
In her written judgment, the hearing officer finds for defendant and dismisses all of Mr. Royer’s claims with prejudice. She makes no award for any medical benefits, either in connection with claimant’s episode of tachycardia and syncope or in connection with his underlying heart disease. It is this judgment which is before the court.
La. R.S. 23: 1031(A) states as follows:
A. If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons' hereinafter designated.
Two terms in this provision, accident and injury, are key in our consideration of the matter before us. La. R.S. 23:1021(1) and (7)(a), respectively, define those terms:
(1) “Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings |6of an injury which is more than simply a gradual deterioration or progressive degeneration.
[[Image here]]
*76 (7) (a) “Injury” and “personal injuries” include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
The medical evidence conclusively establishes that when Mr. Royer experienced his episode of tachycardia and resulting syncope, there was no concurrent injury to his heart. In fact, except for some bruising, he suffered no injury at all. While it is true that his episode of tachycardia and accompanying syncope can be traced back to his coronary occlusions, those events were merely symptoms of his more serious underlying coronary problem. Further, while it is probable that his activities, in unloading his truck, contributed to the episodes of tachycardia and syncope, those activities neither contributed to or exacerbated his underlying coronary disease nor did they produce any compensable injury.
Although the hearing officer’s reasons for judgment are somewhat confusing, our review of the law and the facts convinces us that the result she reached was neither clearly wrong nor manifestly erroneous. The depositions of all three of the physicians, who either examined or treated claimant, were introduced into evidence at the hearing. All three physicians agreed that Mr. Royer did not suffer a myocardial infarction or heart attack (i.e. any injury to his heart) on the morning of May 4, 1994, that his coronary occlusions had been present for some time before that date, and that neither his occlusions nor his heart had been adversely affected by the events of that morning. Dr. John Mickey, the cardiologist claimant consulted in Lafayette, described the claimant as a walking time bomb. This view was shared by Dr. Robert Ball, the first cardiologist to see claimant after his attack of tachycardia, and was not seriously 17disputed by Dr. Craig Walker, who performed an independent medical examination at the request of the OWC. Dr. Walker’s opinion only differed from the other two physicians in the urgency of claimant’s coronary bypass surgery.
Accordingly, for the reasons stated, the decision of the hearing officer dismissing claimant’s petition with prejudice is affirmed.
AFFIRMED.