**STATE IN THE INTEREST OF H.A.B.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. J-68-05
HONORABLE STEVE GUNNELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ELIZABETH A. PICKETT**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, Marc T. Amy, Elizabeth A. Pickett, and David E. Chatelain,[1] Judges.

**REVERSED.**

**Amy, J., dissents and assigns written reasons.**

**Charles Bull, Jr.**
**Post Office Box 400**
**Welsh, LA   70591**
**(337) 734-2811**
  **COUNSEL FOR APPELLEE:**
  **H. A. B.**

**Nicholas Pizzolatto, Jr.**
**Louisiana Department of Social Services**
**Office of Community Services**
**Post Office Box 1867**
**Lake Charles, LA   70602-1867**
**(337) 475-3037**
  **COUNSEL FOR APPELLEE:**
  **State of Louisiana, Department of Social Services**

---

[1]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**David Emile Marcantel**
**Marcantel, Marcantel, Wall, Pfeiffer and Stretcher**
**Post Office Drawer 1366**
**Jennings, LA   70546**
**(337) 824-7380**
  **COUNSEL FOR APPELLANT:**
  **S. B.**

**Stacey C. Naquin**
**Assistant District Attorney**
**Post Office Box 1388**
**Jennings, LA   70546**
**(337) 824-1893**
  **COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**PICKETT, Judge.**

S.B., the mother of the child, H.A.B., appeals a judgment terminating her parental rights.

## FACTS

H.A.B. was born on April 15, 1999, and is the minor child of S.B. The events which led to this termination proceeding began on December 9, 2007, when the Department of Social Services, Office of Community Services (OCS) received a report that S.B. and H.A.B. were involved in an abusive altercation. Witnesses reported that S.B. had attempted to run H.A.B. over with her vehicle, succeeding only in striking the bicycle he was riding. S.B. later explained that she cut off H.A.B. with her car to keep H.A.B. from being run over by a truck. S.B. also allegedly slapped H.A.B. several times. When the police and a bystander tried to intervene in the altercation, both were physically attacked by S.B. While S.B. was originally charged with attempted vehicular manslaughter, all charges related to this incident were later dropped.

An OCS caseworker was called to the police station in regard to this incident. The record indicates that S.B. told the caseworker that she knew where she lived, which was interpreted as a threat by the caseworker, and S.B. was charged with intimidating a public employee. She later pled guilty to the charge and was placed on felony probation.

As a result of the December 9, 2007 incident, H.A.B. entered into the state's custody. This was the second time that S.B. had been taken into custody by OCS. H.A.B. had been removed in March 2005 after the state validated a complaint that S.B. had a drug and alcohol abuse problem. At the same time, OCS was not able to

validate complaints of medical neglect or lack of supervision lodged against S.B. The state returned H.A.B. to his mother's custody in September 2006.

On February 2, 2009, the state filed a Petition for Certification for Adoption, seeking termination of the parental rights of S.B. and the unknown father of H.A.B. A trial was held on April 21 and 22, 2009, for the purpose of determining whether parental rights should be terminated. On July 2, 2009, the trial court signed a judgment terminating the parental rights of both S.B. and the unknown father to H.A.B. S.B. now appeals that judgment.

## ASSIGNMENTS OF ERROR

S.B. asserts three assignments of error:

1. The court erred in finding that H.A.B. has been subject to chronic abuse and neglect since birth.

2. The court erred in finding that S.B. has refused long-term mental health care treatment that she needs to be reunified with her child.

3. The court erred in finding that it is in H.A.B.'s best interest that S.B.'s parental rights be terminated.

## DISCUSSION

*Burden of Proof and Standard of Review*

The Louisiana legislature has recognized that the termination of parental rights is a serious action and thus has mandated that the state must satisfy an onerous burden of proof. *State in the Interest of D.R.B.,* 00-1321 (La.App. 3 Cir. 12/6/00), 777 So.2d 508. Namely, the state bears the burden of proving each element of a ground for termination of parental rights by clear and convincing evidence. La.Ch.Code art. 1035(A); *State in Interest of L.L.Z. v. M.Y.S.*, 620 So.2d 1309 (La.1993). The Louisiana Supreme Court has explained that:

2

> The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven.

*State in the Interest of J.A.*, 99-2905, pp. 8-9 (La. 1/12/00), 752 So.2d 806, 811 (citations omitted). On review of a trial court's decision to terminate parental rights, an appellate court cannot set aside a trial court's finding of fact in the absence of manifest error or unless the findings are clearly wrong. *State in the Interest of K.G. & T.G.*, 02-2886, 02-2892 (La. 3/18/03), 841 So.2d 759.

Louisiana Children's Code Article 1015 provides the statutory grounds a court may use to involuntarily terminate parental rights. The state is only required to establish one of these statutory grounds. *State in the Interest of ML & PL*, 95-45 (La. 9/5/95), 660 So.2d 830. In the present case, the state's Petition for Certification for Adoption and Termination of Parental Rights alleged that termination of S.B.'s parental rights was appropriate pursuant to La.Ch.Code art. 1015, subsections (3), (4), and (5). The trial court based its judgment on a finding that the state had proven grounds for termination as defined by subsections (4) and (5).[2] The relevant subsections of La.Ch.Code art. 1015 state:

---

[2]The unknown father's parental rights were terminated pursuant to the abandonment provisions of Article 1015(4). The judgment terminating the father's parental rights was not appealed, and therefore is not before this court.

The grounds for termination of parental rights are:

(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

*First Assignment of Error*

In her first assignment of error, S.B. argues that "the [trial] court erred in finding that H.A.B. has been subject to chronic abuse and neglect since his birth." Specifically, S.B. asserts that the state failed to carry its burden of proving by clear and convincing evidence that H.A.B. was subject to chronic abuse and thus "failed in its effort to prove even one ground for termination in [La.]Ch.Code art. 1015." S.B.'s argument focuses on a factual finding included in the trial court's reasons for judgment, which seemingly addresses the statutory ground for termination found in

4

La.Ch.Code art. 1015(3)(i).[3]  However, notwithstanding this factual determination, the trial court's judgment terminates S.B.'s parental rights under La.Ch.Code art. 1015 subsections (4) and (5), not subsection (3).

"It is well settled that an appeal is taken from a written final judgment, not the trial court's reasons for judgment, which do not form part of the judgment." *Danzey v. Evergreen Presbyterian Ministries*, 95-167, p. 3 (La.App. 3 Cir. 6/7/95), 657 So.2d 491, 494.  In the present case, the trial court's written final judgment states that S.B.'s parental rights "are hereby permanently and irrevocably terminated pursuant to [Louisiana] Children's Code Article 1015(4) and (5)."  Accordingly, S.B.'s assignment of error contending that the state's failure to prove chronic abuse and neglect resulted in the state's failure to prove any ground of termination is without merit.

*Second Assignment of Error*

In her second assignment of error, S.B. asserts that the trial court erred in finding that the state proved grounds for termination under La.Ch.Code art. 1015(5). Louisiana Children's Code Article 1015(5) sets forth a three-pronged requirement for termination, "requiring a showing of (1) a lapse of one year prior to termination; (2) lack of substantial compliance with the case plan; and, (3) lack of reasonable expectation of significant improvement in the near future." *State v. F.Y. & R.D.Y.*,

---

[3]  La.Ch.Code art. 1015(3)(i) reads:

(3) Misconduct of the parent toward this child or any other child of the parent or any other child in his household which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:

(i) Abuse or neglect which is chronic, life threatening, or results in gravely disabling physical or psychological injury or disfigurement.

05-920, p. 15 (La.App. 3 Cir. 3/1/06*)*, 924 So.2d 1164, 1174. The state must prove each of the three elements by clear and convincing evidence. La.Ch.Code 1035(A).

In the present case, the first prong is not in dispute. The state filed the petition for termination just over fourteen months after removing H.A.B. from S.B.'s custody and just over one year after the first case plan was approved by the trial court on January 24, 2008.

S.B. does dispute that the state proved lack of substantial compliance with the case plan, specifically that she failed to participate in long-term mental health treatment as required by the case plan. Louisiana Children's Code Article 1036(C) provides that proof of lack of substantial parental compliance with a case plan can be evidenced by the following:

> (1) The parent's failure to attend court-approved scheduled visitations with the child.

> (2) The parent's failure to communicate with the child.

> (3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

> (6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

> (7) The persistence of conditions that led to removal or similar potentially harmful conditions.

Since December 2007, S.B. has done everything OCS asked of her and more. Of the seven factors listed in La.Ch.Code art. 1036(C), there is no suggestion that she

6

failed to attend visitation, failed to communicate with the child or OCS, or failed to contribute to the costs of the child's care. The record also shows that since December 2007, she has complied with treatment and rehabilitation services in the case plan and that the trial court's finding to the contrary is manifestly erroneous. The record shows that S.B. attended every counseling session or treatment program that the state required of her.

The record also reflects that S.B. "showed substantial improvement in redressing the problems preventing reunification." While reunification with H.A.B. at this time may not be appropriate, she has done everything she has been asked to do by OCS, and has definitely made substantial improvement. She has stayed off of drugs and alcohol and stayed on her prescribed medication for epilepsy and mental disorders. Finally, because she followed the case plan, many of the conditions that led to removal have been addressed. She has permanent housing and the means to care for H.A.B.

While it is true that S.B.'s mental illness will be a constant factor in her life, that alone is insufficient reason to terminate parental rights in this case. Dr. Alfred Buxton testified that S.B. is bipolar and shows traits of borderline personality and characterological disorder. He testified that the mother could reunite with the child if they had access to constant help and sessions with a therapist at least four days a week. While he ultimately recommended that termination was appropriate because the state could not provide the intensive therapy necessary for S.B. to successfully parent, Dr. Buxton recommended continued contact between S.B. and H.A.B.

Dr. Larry Dilks, who had seen both H.A.B. and S.B. in May 2006, also testified. He diagnosed S.B. as bipolar with anxiety disorder, borderline personality,

7

and depression. Based on the information he heard at the trial, Dr. Dilks recommended that S.B.'s parental rights should be terminated because the state would be unable to provide the treatment and resources necessary to allow for reunification.

We find that the trial court was clearly wrong in finding that S.B. refused long-term health care treatment. The testimony at trial showed that the state was unprepared to continue the intensive therapy necessary for a successful reunification between mother and child. S.B., however, was shown to be willing to attend whatever treatment or therapy sessions that OCS required her to attend. We will not impute to S.B. the state's determination that S.B. is beyond help.

The remaining factor is "the persistence of conditions that led to removal." Clearly, S.B. continues to suffer from mental illness that makes caring for a child difficult. Nevertheless, all the evidence indicates she has taken every step to improve her situation and reunify with her child.

We find that the trial court committed manifest error in finding that termination was appropriate pursuant to La.Ch.Code art. 1015(5) because the state failed to prove substantial compliance with the case plan. Furthermore, as the record indicates that termination of the parental rights of the unknown father, and not S.B., was based on abandonment in La.Ch.Code art. 1015(4), we reverse the judgment of the trial court terminating the parental rights of S.B.

Because we find that the second assignment of error has merit, we need not address the final assignment of error raised by S.B.

**<u>DECREE</u>**

For the foregoing reasons, the judgment of the trial court terminating the parental rights of S.B. in relating to H.A.B. is reversed. Costs of these proceedings are assessed to the state in the amount of $6,867.50.

**REVERSED.**

9

NUMBER 09-1218

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

STATE IN THE INTEREST OF H.A.B.

AMY, J., dissenting.

The majority reverses the trial court's judgment terminating the parental rights of S.B., finding that the State failed to prove grounds for termination of S.B.'s parental rights under La.Ch.Code art. 1015(5). I respectfully dissent as I find the evidence supports the trial court's judgment.

The trial court heard testimony from several witnesses who opined that H.A.B. should not be returned to his mother. Dr. Alfred E. Buxton opined that because the State could not realistically provide the type of intensive services that S.B. would need in order to provide H.B. with a stable environment, H.B. should not be returned to his mother. Dr. Lawrence S. Dilks agreed that H.B. should not be returned to his mother, reasoning that S.B.'s history of failing to change her behavior after being afforded opportunities, demonstrates an inability on her part to ever actually change that behavior.

Louisiana Children's Code Article 1036(C) provides several factors which can evidence a parent's lack of compliance with a case plan under La.Ch.Code art. 1015(5). My review of the record, especially review of the expert testimony, reveals that S.B.'s lack of compliance with the case plan is evidenced by "lack of substantial improvement redressing the problems preventing reunification" and "persistence of conditions that led to removal or similar potentially harmful conditions." La.Ch.Code art. 1036(C)(6) and (7).

The majority finds that trial court erred in finding grounds for termination, but notes that reunification may not appropriate at this time. Admittedly, the State's primary goal in the child in need of care process is reunification; however, if reunification is not possible, termination is appropriate. *State ex rel J.M.,* 02-2089 (La. 1/28/03), 837 So.2d 1247. "Certainly, children have a need for permanency. Forcing children to remain in foster care indefinitely, when there is no hope of reuniting them with their families, runs afoul of the state and federal mandates to further the best interests of the child." *Id* at 1257. The record indicates that S.B. has a history of State intervention involving the rearing of H.B. since 2005. Further, the expert testimony supports that S.B. will be unable to care for the child unless there is indefinite State intervention and monitoring. Accordingly, I find that the record supports the trial court's determination that termination of S.B.'s parental rights is appropriate.

For these reasons, I find that an affirmation is warranted.