LOTTINGER, Judge.
The plaintiff, Dr. Harry Meyer, sued the defendant, Ernest N. Esteb, for the sum of $185, which sum represented the balance due for professional services rendered the defendant’s wife during the months of October and November, 1950. The suit was filed on August 2, 1952. On January 23, 1953, a preliminary default was entered, which was confirmed and made final by judgment rendered on February 11, 1953.
On March 13, 1953, the defendant filed a motion for rehearing and/or new trial wherein it was alleged that the judgment rendered on February 11, 1953, was obtained through fraud or ill practice and further that the judgment was contrary to the law and the evidence because it allowed interest from December 16, 1950, and also on the ground that there was no affidavit or sworn statement of the account annexed to the petition.
On April 27th, the trial judge rendered judgment denying the motion for a new trial or rehearing and at the same time handed down the following:
“On April 20, 1953, the Court for written reasons assigned overruled defendant’s motion for a rehearing or a new trial and stated in the written reasons that the record herein showed personal service on the defendant. Since that time the return of the sheriff has been amended showing that domiciliary service was made on defendant. The record shows that Notice of Judgment herein was served on defendant on April 20, 1953. For these reasons defendant’s motion for suspensive appeal is timely made.”
The defendant’s motion for a new trial and/or rehearing is supported by affidavits executed by himself and his attorney. The pertinent part of defendant’s affidavit reads as follows:
“1.
“That on or about August 6, 1952, affiant brought the papers served upon him’in the suit of ‘Dr. Harry Meyer v. Ernest N. Esteb’ No. 42,714 of the 19th Judicial District Court, Division ‘A’, to Franz Joseph Baddoclc, an attorney at law in Baton Rouge, and thereby authorized the said attorney to answer the suit and file a reconven-tional claim for damages.
“2.
“That within a delay of about 10 or 15 days thereafter, affiant received a phone call from Mr. Frank Gladney, Attorney for plaintiff in the above suit, who stated to affiant, in essence, the following: That rather than having *423 suit, why didn’t affiant come to the office of Attorney Gladney and talk the matter over.
“3.
“That your affiant specifically alleges that he notified attorney Gladney at the time of the above phone conversation, that the matter had been placed in the hands of Attorney Baddock for defense, and that accordingly the matter was out of affiant’s hands.
“4.
“That on or about 30 days following the time that Attorney Gladney telephoned affiant, your affiant alleges on information and belief that Attorney Gladney telephoned affiant’s wife to inquire what she intended doing about the matter of suit, and, on information and belief, your affiant alleged that his wife notified Attorney Gladney that the matter was out of her hands, and in the hands of Attorney Baddock.
“5.
“That your affiant alleges on oath that Attorney Gladney never notified affiant that ’he intended taking a default judgment * * * that Attorney Gladney never notified affiant by letter, or phone, or by any means that he would take a default judgment against affiant.
“6.
“That other than the above communications from Attorney Gladney, your affiant was notified by Attorney Gladney that a judgment had been taken against him on Thursday', March 12, 1953.”
The pertinent part of the affidavit executed by defendant’s attorney reads as follows :
“1.
“That within ten days of August 4, 1952, and on or about August 6, 1952, one Ernest N. Esteb brought to affiant’s office the papers which had been served on him in the case of Dr. Harry Meyer v. Ernest N. Esteb, #42,714, Division A, 19th Judicial District Court’.
' “2.
“That affiant agreed to represent the said Ernest N. Esteb and, within 24 hours of the papers being placed in af-fiant’s hands, affiant contacted Attorney Gladney by phone and disclosed the attorney relationship between affiant and the said Esteb. That on this occasion, Attorney Gladney specifically af-: forded affiant ‘whatever time he needed’.
“3.
. “That subsequently, other discussions were had with Attorney Gladney which centered on the problem of a possible large counterclaim, or recon-ventional claim for damages to be filed in behalf of Ernest N. Esteb, against plaintiff; That these discussions are reflected in a letter directed to Attorney Gladney by affiant, under date of September 11, 1952.
“4.
“That although Attorney Gladney insisted on suit remaining in the 19th Judicial District Court, Attorney Glad-ney always, at all times, led affiant to believe that there was no occasion or . rush in the above suit; that on any and • all occasions when discussions were had with Attorney Gladney, affiant was led to believe that- as much time would be allowed affiant, as affiant wanted, -
“5.
“That affiant swears upon oath, that attorney Frank Gladney at no time indicated to affiant, either by letter, phone conversation, suggestion, or otherwise, that a default was contemplated against the said Ernest Esteb.
“6.
“That affiant’s first knowledge of the fact that attorney Frank Gladney had confirmed a default judgment against Ernest Esteb, was upon receiving a *424 call from the said Esteb, on Thursday, March 12, 1953.”
The letter referred to in the above quoted affidavit of the defendant’s attorney is attached to plaintiff’s brief and a reading thereof shows that it supports the allegations concerning it. The record also clearly substantiates the recitals of the above affidavits in that at no time was either the defendant or his attorney notified that a default was contemplated. Indeed, in plaintiff’s brief we find the following admission:
“Undersigned counsel promptly conveyed this determination of plaintiff to proceed with his suit to the Honorable counsel for the defendant, Mr. Esteb. We again assured Mr. Baddock that he would be allowed any reasonable amount of time to file his pleadings.
“We were unable to get any statement from Mr. Baddock as to when his answer would be filed, and after repeated complaints from attorneys for our client in New Orleans, we entered a motion on January 23, 1953, for a transfer of this case to Division ‘D’ and for the entry of a preliminary default.” (Italics ours.)
It is apparent from the ruling of the Trial Judge that the motion for new trial or 'rehearing which was filed on March 13, 1953, was more than-one month after the judgment -had been signed on February 11, 1953. The District Judge was powerless to amend or annul the judgment on the motion for a new trial1 because it was not timely filed. Article 556 of the Code of Practice provides the procedure whereby definitive judgments may be revised, set aside or reversed:
1. By new trial;
2. By appeal;
3. By action of nullity;
4. By recision.
This last mentioned can only be exercised by minors or persons who were absent when judgment was rendered against them. It is obvious that the defendant is seeking a new trial although he asks that the judgment be decreed a nullity in his motion. It is well settled that a motion for a new trial must he filed within 3 days after the rendition of judgment, except in cases where the judgment was not signed.
This- Court held in the case of McClel-land v. District Household of Ruth, 151 So. 246, that the Trial Court was without authority to set aside a judgment which was obtained on confirmation of default and was obviously an absolute nullity and to grant a new trial where three calender days had expired from the rendition of the judgment when the motion was filed by defendant.
Articles 604 to 608 of the Code of Practice contain the provisions of our law relative to the annulment of judgments. Under these Articles, the causes for which the nullity of a judgment may be demanded fall in two classes, vices in' form of proceedings and vices which go to the merits of the case. The vices of form are contained in Article 606 and are absolute nullities and are subject to collateral attack in proper proceedings at any time.
Article 607 states the causes for nullitj which pertain to the merits of the case.
Under the provisions of Article 608:
“The nullity of judgment may be demanded from the same court which has rendered the same, or from the court of appeal before which such judgment was taken, pursuant to ttie provisions hereafter expressed.”
and Article 609 provides when the nullity can be demanded, on appeal, which reads:
“The nullity can be demanded on the appeal, only while the, appeal is still pending, and when the nullity is apparent on the face of the records.”
The party seeking the nullity of a judgment before the court which has rendered the same must bring, his action by means of a petition; and the adverse party must be cited to appear as in ordinary suits.
*425 The defendant in this 'case by his motion for new trial which was not timely filed, asks us to nullify the judgment because it was obtained by fraud and ill practices although his motion was not timely filed. We cannot consider the affidavits attached to his motion, as well as the letter, because they did not come into this suit until after the default was confirmed and the judgment signed. For this evidence to be available to the defendant and as a basis for cause of action for nullifying the judgment against him, they would have to be used in a direct proceeding of nullity by petition and citation to the defendant under Article 610 of the Code of Practice and cannot be urged in a motion for a new trial belatedly filed. Wallace v. Martin, La.App., 166 So. 874; Code of Practice, Article 556; McClelland v. District Household of Ruth, La.App., 154 So. 246; Louisiana Law Review, Vol. 3, page 623.
In the cases cited by appellant and urged in support of his motion for new trial, the nullity urged in each of the suits was by direct action to annul the judgment and not urged in a motion for new trial untimely filed. If these grounds had been urged in a motion filed within three days after the rendition and signing of the judgment, thej could be considered, but since the motion was not timely filed these grounds can be urged only in a direct action of nullity. Cutrer v. Cutrer, La.App., 169 So. 807; DeFrances v. Gauthier, 220 La. 145, 55 So. 896. The motion for new trial was timely filed. There is nothing under our law to prevent a defendant who has suffered a default judgment to be rendered against him and which is subject to be set aside or annulled under the grounds of Article 607 from appealing from the judgment rendered against him and simultaneously instituting a suit in which its nullity can be urged. State ex rel. Pelletier v. Sommerville, Judge, 112 La. 1091, 36 So. 864.
 The other ground urged for the reversal of the judgment and which we have a right to consider on this appeal, is the weight and sufficiency of the evidence adduced on the trial of the confirmation of the default to support the judgment and is one which deserves our consideration. The preliminary default is passive joinder of issue and equivalent to answer containing general denial or special denial of each material allegation of fact in plaintiff’s petition, and a confirmation of default or attempt to confirm preliminary default is trial of case on merits on issue joined by preliminary default. Code of Practice, Articles 312, 360, 314; Russo v. Aucoin, La.App., 7 So.2d 744.
The plaintiff’s suit is for professional services rendered by him to defendant’s wife, in which it is alleged that it was at defendant’s special insistence and request that said services were rendered during the months of October and November, 1950. The only proof offered on the confirmation of the default was the original petition and the affidavits filed therein and the return of the Sheriff of the Parish of East Baton Rouge showing service on the defendant on August 4, 1952, and the entry of a preliminary default herein on January 23, 1953. The account is marked “P-1” in red pencil, is dated 7-25-52, and was first made out to Mrs. Ernest N. Esteb, and after being typewritten, the “s” was stricken with pen to make it appear that the account was to Mr. Ernest N. Esteb. The invoice is for professional services:
10-28-50 Office $ 10.00
11-16-50 Surgery 200.00-
$210.00
Paid on account
11-23-50 $15.00
12-20-50 5.00
8-23-51 5.00
$25.00
Balance Due $185.00
The affidavit attached to the account is marked “P-2” and reads as follows:
“State of Louisiana
Parish of Orleans
“Be it remembered that on this 28 day of July, 1952, personally appeared before me, the undersigned authority,
*426 Dr. Harry Meyer, who, being duly sworn,' did depose and say:
“That he is a practicing physician of New Orleans, La. and that he makes this affidavit.
“That the attached account is just and correct within the knowledge of affiant; that the items thereon stated and composing the said account represent services rendered to defendant’s wife at defendant’s special instance and request; that credit has been duly ■given for all payments and just and lawful' offsets to which said account is entitled, as thereon stated.”
The above was all of the evidence offered on the confirmation of the default except the petition and citation, the returns of which were subsequently corrected to show that domiciliary service was made on the defendant and not personal service. The judgment does not recite that the plaintiff had personally appeared and proved his demand. The question, therefore, to be decided by us is whether or not professional services rendered by a physician to defendant’s wife at his insistence and request can be considered as such an open account that could merely be proved by a statement showing the amount due him for a visit to his office without specifying what the consultation was for or the kind of services rendered except in general terms. This record is barren of any proof whatever to show what services the plaintiff rendered to defendant’s wife at his office on October 28, 1950, or'what surgery was performed on November 16, 1950, other than the statement and affidavit referred to above.
C. P. Art. 312, states as follows:
“If, two days (whether judicial or non-judicial but exclusive of Sundays and legal holidays) after the first judgment has been rendered, the defendant neither appear nor file his answer, definitive judgment will then be given for the plaintiff, provided he prove his demand. This proof is required in all" cases, and when the demand is for a sum due on an open account, then an affidavit of correctness thereof, before any. competent officer* shall be prima facie proof.”
The term, “open account” is defined by Am.Juris. vol. 1, pp. 265-266, and particularly the following, under paragraph 3, on page 265 in said volume under Accounts and Accounting:
“The term ‘open account’ means, ordinarily, an account based upon running or concurrent dealings between the parties which has not been closed, settled, or stated, and in which the inclusion of further dealings between the parties is contemplated. But the term has also been construed as applicable to a transaction some of the terms of which have not been agreed upon, such as the price to be paid or the time for payment.”
In dealing with the prescription of three years, we find under LSA-C.C. Art. 3538, that the accounts of physicians, surgeons and apothecaries for visits, operations and medicines are prescribed by three years and the said article uses the language on all other accounts, thereby indicating that unless there is a contract that the services rendered by a physician is to be considered as an open account. We are therefore convinced that this is nothing more- than an open account and that the plaintiff was entitled to prove same by statement and affidavit as was done in this case. Furthermore, if the defendant was not satisfied, with the account as rendered, it was in his power to ask for an itemized statement in accordance with his wishes before default was entered and confirmed. The account, as rendered and produced at trial of the case, in the absence of any objection, fully appraised the defendant and the. court what plaintiff was demanding. See F. Strauss & Sons v. Economy Cash Grocery, 18 La.App. 454, 138 So. 191.
Defendant’s next complaint deals with the rules of the Nineteenth Judicial District Court, of the Parish of East Baton Rouge, as well as with LSA-R.S. 13:3345, which is as follows:
*427 “Every pleading subsequent to the original petition, every written motion and every written notice, appearance, demand, and similar paper shall be served upon each of the parties affected thereby through his attorney of record, or on the party, if not represented by an attorney, but no service need be made on parties in default for failure to appear except pleadings asserting new or additional claims for relief against them.”
According to the rules of the Nineteenth Judicial District Court, Section 2 of Rule 1, provides for four divisions, designated as A, B, C and D, three of which handle' all civil matters and are known as Civil Divisions and one which handles criminal matters and known as the Criminal Division. Section 3 of Rule l, provides that the court shall be at recess during the months of August and September of each year, and according to Section 4 of Rule 1, Division A, the division to which this case was allot-ed, was to be the Criminal Division from September 1, 1952, through February, 1953. Defendant further states that when this suit was filed in August of 1952, it was al-loted to the division which was to be, the Criminal Division from September 1, through February. In this connection Section 1, of Rule 5 was applicable, which provides as follows:
“ * * * Provided, however, that whenever a case has been seriously al-loted to a division of the court which is then currently handling criminal matters as the Criminal Division, the case shall, upon written motion of counsel for any party, be transferred from that division to the court of the division which was last designated as the Criminal Division under these rules. The Clerk shall provide forms for such motions.”
Defendant further complains that nothing further was done until January 23, 1953, when plaintiff’s attorney transferred the suit from Division A to Division D, without notice, either to defendant or to defendant’s counsel according to LSA-R.S. 13:3345. ■ Subsequently, on February 11, 1953, plaintiff confirmed judgment by default and defendant claims that since he was not given notice according to said statute as hereinabove referred to, that the said default and confirmation rendered by said court is null and void. He has cited to this court, Alonso v. Bowers, 222 La. 1093, 64 So.2d 443, which involves said act. It is our interpretation of the portion of Rule 5, as hereinabove stated that all of the cas'es alloted to the Criminal Division are not automatically transferred to the other divisions, sitting as Civil Divisions, but are only transferred upon written motion of counsel for any party. That being the case, we are inclined to believe that this defendant was entitled to the notice as provided in the statute above referred to and therefore conclude that the judgment by default, as well as confirmation as found in this record are null on the face of the record.
Therefore for the above and foregoing reasons, the judgment appealed from is reversed and the case remanded and that a new trial be had. The cost of this appeal to be borne by appellee.
Judgment reversed and case remanded.
. Appeal from the Nineteenth Judicial District Court, Parish of East Baton Rouge, Honorable Coleman Lindsey, Judge.
No. 3857