683 So.2d 367 (1996)
Derrick D. WASHINGTON
v.
LYON'S[1] SPECIALTY COMPANY.
No. 96 CA 0263.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
Writ Denied January 31, 1997.
*369 Paul Matzen, Baton Rouge, for Plaintiff/Appellee, Derrick D. Washington.
Michael L. Hyman, Baton Rouge, for Defendant/Appellant, Lyons Specialty Co., Inc.
Before WATKINS, KUHN and GUIDRY, JJ.[2]
GUIDRY, Judge.
Defendant, Lyons Specialty Co., Inc., ("Lyons"), appeals from the decision of a workers' compensation hearing officer holding it liable for payment of supplemental earnings benefits ("SEB") to plaintiff, Derrick Washington ("Washington"). The decision also assessed Lyons with penalties and attorney's fees for arbitrary and capricious conduct and the failure to timely respond to *370 discovery; with costs, including an expert witness fee; and with responsibility for payment of certain medical expenses, including the cost of a work hardening program for Washington.

FACTS
Washington was working in the course and scope of his employment with Lyons on April 21, 1994, when he injured his back, neck and ankle during a fall. Lyons sent him to see Dr. D.J. Scimeca who diagnosed a thoracic muscle strain. Because Washington's complaints of pain continued, Dr. Scimeca referred Washington to Dr. Stephen Wilson, an orthopedist with the Bone and Joint Clinic.
Dr. Wilson first examined Washington on May 10, 1994, and gave him an injection in his back for the pain. Dr. Wilson gave Washington another injection on May 17, 1994. At the next visit on May 20, 1994, Dr. Wilson released Washington to return to work on Monday, May 23, 1994. Washington became dissatisfied with Dr. Wilson's treatment and made an appointment with Dr. Lawrence J. Messina, also with the Bone and Joint Clinic. Dr. Messina examined Washington on June 7, 1994, and concluded that he could return to work in a couple of days. Lyons paid for the visits with Dr. Scimeca, Dr. Wilson and Dr. Messina.
Washington returned to work on June 10, 1994; however, he injured his back again on June 15, 1994, while lifting a box of candy. He received treatment by his family physician, Dr. Lon A. Boucvalt, the day after the second accident.[3] Dr. Boucvalt released Washington to return to work on June 20, 1994.
Washington contacted his attorney and was sent to the Metropolitan Health Group ("Metro") for treatment. His was first seen at Metro on June 23, 1994, by Dr. Arthur A. Mauterer, a general practitioner. Dr. Mauterer recommended Washington refrain from working until the next evaluation which was on July 21, 1994, with Dr. Gerdes. Dr. Gerdes continued the no-work restriction through two more visits, the last of which occurred on September 15, 1994.
In the meantime, Lyons sent Washington to see Dr. Wilson on August 3, 1994. After this visit, Dr. Wilson found no reason for Washington's continued complaints, and released him to continue his regular activities.
An independent medical examination ("IME") was conducted by Dr. W. Joseph Laughlin on October 5, 1994. Dr. Laughlin ordered an MRI to ensure nothing was wrong with Washington's back, as he could find no objective reason for the complaints. The MRI was conducted in January 1995 in New Orleans and the results were normal.
Prior to this time, Washington had returned to light duty work during the week of September 26, 1994, earning the same hourly rate of pay as he earned before the accident. However, he only averaged between two and four hours of work a day because he was in pain.
A functional capacities evaluation ("FCE") was conducted by Pamela Johnson on April 10-11, 1995. After the FCE, Ms. Johnson opined that Washington could return to light duty work for four hours a day with breaks. Ms. Johnson also recommended a work hardening program through which Washington could increase his tolerance to a normal work day.
Washington's expert, Louis Lipinski, a vocational rehabilitation counselor, conducted an on-site job analysis regarding Washington on April 27, 1995. After this analysis of Washington's duties and place of employment, Mr. Lipinski felt that the duties Washington was required to perform were more appropriately classified as medium duty, not light duty. He opined that Washington could work light duty on a frequent basis for four hours a day. When asked how Washington could increase the number of hours worked per day, Mr. Lipinski stated that the lifting requirements would have to decrease, support devices would have to be provided to Washington and he would have to participate in a work hardening program.
*371 A hearing was held on May 10 and May 23, 1995. After the presentation of all of the evidence, the hearing officer took the matter under advisement. On September 6, 1995, another hearing was held wherein her decision was recited in open court. A final decision was signed on September 25, 1995. The decision provided as follows:
1. Claimant sustained an accident and injury in the course and scope of employment on 4/21/94 which was subsequently aggravated by another work-related accident on or about 6/14/94.
2. Employer did not authorize treatment with claimant's choice of orthopedist following the initial accident and Claimant is awarded $1,000.00 in penalties and $1,000.00 in attorney's fees for the denial of this right.
3. Claimant's choice of general practitioner was Dr. Lon Boucvalt. Claimant later changed to Metropolitan Health Group without seeking the approval of the Employer or the Court. Claimant is responsible for payment of his appointments with the doctors at Metropolitan Health Group.
4. The physical therapy and treatment provided at Metropolitan Health Group is considered reasonable and necessary and Employer is ordered to pay for and/or reimburse claimant for payment of these expenses.
5. Claimant is capable of performing light duty work for at least three hours per day. He may take as many breaks as needed and Employer is ordered to provide a place for him to rest as necessary. In the event that he is not able to work at least three hours per day, he must communicate this to his supervisor and/or company nurse.
6. Employer is ordered to pay supplemental earnings benefits in the full amount less a credit for those hours actually worked up until May 23, 1995. Following May 23, 1995, Employer may take a credit for three hours per day at Employee's regular hourly rate of pay.
7. Employee's average weekly wage shall be based upon the four weeks prior to April 21, 1994.
8. Employer was arbitrary and capricious in failing to pay supplemental earnings benefits and is assessed with a penalty of $1,500.00 and attorney's fees of $1,500.00.
9. Claimant is entitled to his choice of treating orthopedist.
10. A work hardening program was recommended by Pamela Johnson and is found to be reasonable and necessary.
11. Employer is assessed with all costs of these proceedings, including but not limited to the deposition fees of Dr. Gerdes and Dr. Laughlin and the expert witness fees of Louis Lipinski.
12. Employer failed to promptly answer the discovery requests of the claimant, in particular those concerning his wage records and work duties. Employer is assessed with attorney's fees in the amount of $1,000.00.
Lyons appealed from the decision asserting the following twelve assignments of error:
1. The hearing officer erred in her findings that an employer denied an employee his choice of physician because the employee presented no evidence to support that finding and in fact testified that he chose Dr. Messina.
2. The hearing officer's modification of her oral judgment as rendered in open court was a substantive modification of a final judgment that renders her modification null.
3. The hearing officer erred by finding that Derrick Washington's work realted (sic) injury precluded him from earning 90% or more of his pre-accident average weekly wage and awarding SEB benefits (sic).
4. The hearing officer committed legal error by awarding SEB benefits (sic) post-judgment.
5. The hearing officer erred by awarding penalties and attorneys' fees for the non-production of updated wage records because the records were *372 never requested during the discovery period.
6. The hearing officer committed legal error by not applying the formula set out in La.R.S. 23:1021(10)(a)(i) to calculate the average weekly wage of an hourly employee.
7. The hearing officer erred by ordering Lyons to pay for the Physical Therapy and treatment provided at Metropolitan Health.
8. The hearing officer committed legal error by ordering Lyons to pay for physical therapy that was not performed by a licensed physical therapist.
9. The hearing officer erred by finding that the claimant is entitled to see another orthopaedist.
10. The hearing officer erred by finding the work hardening program was reasonable and necessary.
11. The hearing officer erred by awarding costs to Derrick Washington.
12. The proper appellate standard of review to apply to conclusions of an office of workers' compensation hearing officer is the standard of review found in the Louisiana Administrative Procedure Act and not the Rosell Manifest Error Standard of review (sic) currently being used by Apellate Courts (sic).

STANDARD OF REVIEW
Initially, we will address Lyons' last assignment of error regarding the proper appellate standard of review. Lyons contends that the standard of review set forth in the Louisiana Administrative Procedures Act should govern this court's review of the hearing officer's finding. We disagree.
Louisiana jurisprudence is clear that in a workers' compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94); 630 So.2d 733, 737; Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). A court of appeal may not set aside a hearing officer's finding of fact in absence of "manifest error" or unless it is "clearly wrong." Freeman, 630 So.2d at 737; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Stobart, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, 617 So.2d at 882; Rosell, 549 So.2d at 844; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).

CHOICE OF PHYSICIAN
In its first and ninth assignments of error, Lyons complains about the hearing officer's finding that Washington was denied his choice of physician and that he is entitled to see another orthopedist at Lyons' expense.
After the first accident, Washington saw Lyons' choice of orthopedist, Dr. Wilson. Subsequently, and following Dr. Wilson's release of Washington to return to work, Washington became dissatisfied with his treatment by Dr. Wilson and called Susan Mack, the claims adjuster responsible for handling Washington's claim in June 1994, to request an appointment with another orthopedist. Washington admitted he was told he could see another orthopedist, although he does not recall being told he could choose the doctor he wanted. Washington testified that he called Ms. Mack back with the names of a few doctors, but he was told they were not orthopedists. Thus, Ms. Mack provided him with the names of three orthopedists, one of whom was Dr. Messina. Washington chose Dr. Messina and acknowledged that Ms. Mack told him Dr. Messina was in the same building as Dr. Wilson.
Ms. Mack testified that Washington called requesting to see another orthopedist because he disagreed with Dr. Wilson's recommendation to return to work. Ms. Mack told Washington to call her back as soon as possible *373 with the name of his choice of orthopedist. Washington called back with Dr. Messina's name and Ms. Mack authorized this visit. She admits that when Washington made his choice, she did not tell him that Dr. Messina was in the same office as Dr. Wilson.
The hearing officer concluded that Washington was denied his choice of physician prior to the second accident. Accordingly, she found that Washington was still entitled to see another orthopedist and Lyons was responsible for payment of the treatment. In reaching this decision, the hearing officer imposed a duty on the employer to inform "an unknowing and unrepresented employee of [his] rights in regards to a choice of physician." Finding that Ms. Mack took advantage of her superior position and abused the workers' compensation system, the hearing officer awarded $1,000.00 in penalties and $1,500.00 in attorney's fees for the failure to allow Washington to exercise his choice of physician.
Initially, we conclude that an award of attorney's fees and penalties was not proper in this case. Louisiana Revised Statutes 23:1121(B) gives the employee the right to choose one treating physician in any field or specialty (emphasis added). Thereafter, the employee must obtain the employer's or insurer's prior consent for a change of physician within the same field or specialty, although this consent is not required for a change to a treating physician in another field or specialty. La.R.S. 23:1121(B). Under La.R.S. 23:1121(C), if the employer or insurer has not consented to the employee's request to change physicians when such consent is required and a court determines that the withholding of such consent was arbitrary and capricious or without probable cause, an award of attorney's fees related to the dispute is proper. There is no provision in this statute for an award of penalties. Moreover, based on the clear language of the statute, the attorney's fee provision only applies to the situation where an employer refuses to allow an employee to change his initial choice of a physician in a field. Under Louisiana law, attorney's fees are not allowed except where authorized by statute or contract. Graves v. Businelle Towing Corporation, 95-1999 (La.App. 1st Cir. 4/30/96); 673 So.2d 311, 316.
In the present case, Lyons' consent was not required for Washington to see his first choice of an orthopedist because Washington had a right to see an orthopedist of his choice. La.R.S. 23:1121(B). Accordingly, the hearing officer committed legal error in awarding penalties and attorney's fees for Lyons' alleged failure to allow Washington to exercise his choice of physician.
Additionally, the hearing officer erred in finding that Washington was still entitled to see an orthopedist at Lyons' expense. Washington admitted he was given three choices and it was his choice to see Dr. Messina. He also conceded that Ms. Mack informed him that Dr. Messina and Dr. Wilson were in the same building. Moreover, he previously possessed a release from Dr. Wilson authorizing him to return to work, which was written on a prescription pad that contained the names of both Dr. Wilson and Dr. Messina. Thus, plaintiff was not uninformed regarding his choice of Dr. Messina as his orthopedist. Finally, we are not aware of any specific statutory or jurisprudential duty imposed upon an employer or insurer to advise an employee that the treating physician of his choice is in practice with the treating physician of the employer's or insurer's choice. Consequently, we find that Washington chose Dr. Messina as his treating orthopedist and is, therefore, not entitled to change treating orthopedists without the prior consent of Lyons.

SUBSTANTIVE MODIFICATION OF JUDGMENT
In its second assignment of error, Lyons urges that the hearing officer improperly made a substantive modification to her oral decision as rendered in open court on September 6, 1994. Lyons relies on La. C.C.P. art. 1951 to support his argument.
This article provides that "[a] final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party: (1) To alter the phraseology of the judgment, but *374 not the substance; or (2) To correct errors of calculation." (Emphasis added.) This article prohibits only the substantive modification of a final judgment. A judgment is not considered final until it is signed and it is not rendered until it is signed. See La.C.C.P. art. 1911; Meyer v. Esteb, 75 So.2d 421, 431 (La.App. 1st Cir.1953).
At the conclusion of the presentation of the evidence by the parties on May 23, 1995, the hearing officer took the matter under advisement. Subsequently, on September 6, 1995, a hearing was held in the presence of counsel for Washington and Lyons at which the hearing officer orally recited her decision. During this recitation, the hearing officer found that Lyons was unreasonable in refusing to pay SEB and in its calculation of Washington's average weekly wage. Consequently, the hearing officer assessed Lyons with a penalty of $1,500.00 and attorney's fees of $1,500.00. Later in the same proceeding, the hearing officer was informed by counsel for Washington that Lyons' calculation of Washington's average weekly wage was correct. Accordingly, the hearing officer removed the "unreasonable calculation of average weekly wage" basis for the penalty and attorney's fee award, but declined to lower the amount of the penalty and attorney's fee because of Lyons' unreasonable failure to pay SEB. The written decision, which was signed on September 25, 1995, reflected the imposition of a $1,500.00 penalty and $1,500.00 attorney's fee for the unreasonable failure to pay SEB. No changes were made to this decision after it became final on September 25, 1995. Thus, this assignment of error is without merit.[4]

SUPPLEMENTAL EARNINGS BENEFITS
In its third assignment of error, Lyons contests the finding by the hearing officer that Washington proved his entitlement to SEB.
A claimant's entitlement to SEB is governed by La.R.S. 23:1221(3). Like all other provisions of the workers' compensation law, the provisions governing SEB must be liberally construed in favor of coverage. Putman v. Commercial Union Insurance Co., 93-2263 (La.App. 1st Cir. 11/10/94); 645 So.2d 1250, 1252. The purpose of SEB is to compensate the injured employee for wage-earning capacity he has lost as a result of an accident. The threshold prerequisite to the recovery of SEB is that the employee's injury results in his inability to earn wages equal to 90% or more of the wages he was earning at the time of the injury. Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1006-07 (La.1989); Putman, 645 So.2d at 1252. Thus, the injured employee bears the burden of proving by a preponderance of the evidence that his work-related injury resulted in his inability to earn that amount. Putman, 645 So.2d at 1252.
In determining if an injured employee has made out a prima facie case of entitlement to SEB, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage. Daigle, 545 So.2d at 1007. The mere fact that the employee has been released to return to work does not automatically disqualify him from receiving SEB. Putman, 645 So.2d at 1252.
After reviewing the record in its entirety, we find that a reasonable basis did exist for the hearing officer's ruling that Washington is unable to earn at least 90% of his pre-accident wages.
The medical evidence on Washington's ability to return to work after the second accident is conflicting. His family physician, Dr. Boucvalt only refrained Washington from working until June 20, 1994. Washington never returned to see Dr. Boucvalt.
Dr. Wilson saw Washington on August 3, 1994, and could find no objective basis for Washington's continued complaints. Thus, *375 Dr. Wilson told Washington to continue his exercises and his regular activities.
Contrarily, Dr. Mauterer and Dr. Gerdes at Metro saw Washington between June 23 and September 15, 1994, and continually refrained Washington from working because of a lumbar and cervical strain. The last of these visits occurred on September 15, 1994, after which time, Washington never returned to Dr. Gerdes.
In light of the different opinions regarding Washington's ability to return to work, Dr. Laughlin conducted an IME of Washington on October 5, 1994. Dr. Laughlin was also unable to find any objective reason for Washington's complaints, but ordered an MRI to ensure that there was nothing wrong with Washington's back. The MRI results were normal. The MRI results constitute the end of the medical evidence pertaining to Washington's condition after the second accident.
The wage records produced by Lyons revealed that Washington returned to light duty work during the week of September 26, 1994, although he was working only 2-3 hours a day. Washington testified that he was unable to work any longer because the pain was too great. While he was earning the same hourly wage as before the accident, his inability to work a 40 hour week, as well as the overtime hours that he had been able to work before the first accident, resulted in an inability to earn at least 90% of his pre-accident wages. Furthermore, there was no evidence that Washington, whose previous jobs all required manual labor, is suited for anything other than manual labor work. Additionally, the results of the FCE performed on Washington by Ms. Johnson established that Washington could perform the light duty work available at Lyons within a four hour work interval with frequent breaks. A work hardening program was also recommended by both Mrs. Johnson and Mr. Lipinski.
Despite the absence of any medical evidence regarding Washington's ability to return to light duty work on a full time basis after October 5, 1994, we cannot say the hearing officer was manifestly erroneous in concluding that Washington proved his entitlement to SEB based on the aforementioned evidence. Thus, the award of SEB is affirmed.
Additionally, Lyons argues, in its fourth assignment of error, that the hearing officer committed legal error by awarding SEB post-decision. Specifically, Lyons contends that the workers' compensation act does not provide the hearing officer with authority to award SEB which extend past the date of decision. We disagree.
Louisiana Revised Statutes 23:1221(3) imposes conditions under which SEB shall terminate. These conditions would not be necessary if the hearing officer only had authority to award benefits through the time of the final decision. Additionally, Louisiana jurisprudence recognizes that awards for SEB post-decision are proper. See Cassard v. American General Fire & Casualty Company, 568 So.2d 1151, 1156 (La.App. 5th Cir.1990); Woolsey v. Cotton Brothers Bakery Co., Inc., 535 So.2d 1119, 1127 (La.App.2d Cir.1988), writ denied, 537 So.2d 1168 (La.1989). Consequently, the hearing officer's award of SEB post-decision was not erroneous.

PENALTIES AND ATTORNEY'S FEES
Lyons also contests the award of penalties and attorney's fees for its failure to pay SEB. At the September 6, 1995 hearing, the hearing officer found that the "employer was not reasonable in refusing to pay SEB benefits." Accordingly, she assessed Lyons with a penalty of $1,500.00 and attorney's fees of $1,500.00. We conclude this award was in error.
The Louisiana Workers' Compensation Act was significantly amended in 1983. Following these amendments, the "arbitrary and capricious" standard continues to apply to attorney's fee awards under La.R.S. 23:1201.2. However, the "arbitrary and capricious" standard no longer applies to an award of penalties, which is now governed by La.R.S. 23:1201.[5]Henderson v. New Medico *376 Associates, Inc., 95-0488 (La.App. 1st Cir. 11/9/95); 667 So.2d 1094, 1099, writ denied, 96-0505 (La. 4/8/96); 671 So.2d 338; Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1st Cir. 11/9/95); 665 So.2d 422, 430-31; Johnson v. Vinson Guard Service, Inc., 92-2187 (La.App. 1st Cir. 3/11/94); 636 So.2d 914, 916, writ not considered, 94-1661 (La. 9/2/94); 642 So.2d 1280.
The assessment of penalties is now determined by inquiring whether the employer or its insurer has "reasonably controverted" the compensation claim. La.R.S. 23:1201(E); Henderson, 667 So.2d at 1099; Gentile, 665 So.2d at 431; Johnson, 636 So.2d at 916. To determine if a claim has been "reasonably controverted," the facts, medical and otherwise, known to the employer or his insurer must be examined. Given these facts, if the employer or insurer had a reasonable basis to believe that medical expenses and compensation benefits were not due the employee, an award of penalties is inappropriate. Stated differently, penalties are not appropriate if the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Gentile, 665 So.2d at 431; Johnson, 636 So.2d at 916; Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La. 1990). Additionally, statutory penalties are not owed if the non-payment resulted from conditions over which the employer or insurer had no control. La.R.S. 23:1201(E).
Based on the face of the hearing officer's written decision, it appears that she improperly applied the same standard ("arbitrary and capricious") to the actions of Lyons in determining whether it was liable for both attorney's fees and penalties. Normally, whether an employer's refusal to pay workers' compensation benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed on appeal in the absence of manifest error. Henderson, 667 So.2d at 1099; Gentile, 665 So.2d at 431; Johnson, 636 So.2d at 916. However, where, as in the instant case, the trial court commits legal error by applying the incorrect legal standard or principle, this Court is required to determine the facts de novo from the entire record and render a decision on the merits. Gentile, 665 So.2d at 431; Johnson, 636 So.2d at 916; see Gonzales v. Xerox Corporation, 320 So.2d 163, 166 (La.1975). Thus, we will perform a de novo review of the hearing officer's award of penalties and apply the manifest error standard of review to the hearing officer's award of attorney's fees.

Penalties Award
To render Lyons liable for statutory penalties for the failure to pay SEB, we must find that Lyons failed to pay SEB to Washington within fourteen days after it had knowledge that compensable SEB were payable and that Lyons did not "reasonably controvert" Washington's right to such compensation. La.R.S. 23:1201(C) and (E); Miller v. Roger Miller Sand, Inc., 94-1151 (La. 11/30/94); 646 So.2d 330, 336. The employee has the burden to show his entitlement to an award of penalties. Bourgeois v. Houma General Painting and Waterproofing Company, 515 So.2d 486, 492 (La.App. 1st Cir. 1987). Additionally, as La.R.S. 23:1201 is penal in nature, we are confined to a strict and narrow construction of it in determining whether to award penalties. Danzey v. Evergreen Presbyterian Ministries, 95-167 (La.App.3d Cir. 6/7/95); 657 So.2d 491, 497; see Graham v. Georgia-Pacific Corporation, 26, 165 (La.App.2d Cir. 9/23/94); 643 So.2d 352, 363; Robichaux v. Terrebonne Parish School Board, 426 So.2d 241, 245 (La.App. 1st Cir.1983).
In the present case, a de novo review of the record precludes an award of statutory penalties for the failure to pay SEB because we find that Washington failed to prove he was entitled to penalties.
The record shows that Washington's family physician, Dr. Boucvalt, only advised Washington to refrain from working from June 15-19, 1994. After this visit, Washington contacted his attorney and instead of returning to see Dr. Boucvalt, Washington saw Dr. Mauterer on June 23, 1994. This was done without the consent or prior approval of Lyons. The Metro doctors who *377 treated Washington continually refrained Washington from returning to work, even as of the time of Washington's last visit on September 15, 1994. These doctors also requested further diagnostic testing. In light of the conflicting medical opinions regarding Washington's ability to return to work, Lori Stockstill, the adjustor responsible for handling Washington's claim in July 1994, scheduled an appointment for Washington with Dr. Wilson. Dr. Wilson was unable to find anything objectively wrong with Washington and stated Washington could return to his regular activities. Despite Dr. Wilson's findings, Ms. Stockstill scheduled an IME with Dr. Laughlin to resolve the dispute regarding Washington's alleged disability and the need for further diagnostic testing.
Dr. Laughlin conducted the IME on October 5, 1994. His deposition indicates that he could not find anything objectively wrong with Washington to explain his complaints. He also felt that Washington was capable of returning to full-time light duty work, with some restrictions and that Washington should be able to gradually return to regular duty work within six weeks. Dr. Laughlin recommended that Washington undergo an MRI to ensure nothing was wrong with his back. The MRI was conducted in January 1995 and the results were normal. This concluded the medical evidence regarding Washington's ability to return to full-time light duty work.
On April 10-11, 1995, the FCE was conducted, the results of which were that Washington could work up to four hours a day doing light duty. Throughout this period of time, Washington continually maintained that he could not work full-time, even performing light duty, because of the pain. However, this contention was contradicted by the medical evidence from Drs. Boucvalt, Wilson and Laughlin.
Accordingly, we find that relying on the medical reports in its possession and the testimony, Lyons had sufficient information to reasonably counter any claim by Washington that SEB were due. Thus, an award of penalties for the failure to pay SEB is inappropriate under these facts.

Attorney's Fee Award
To be entitled to an attorney's fee award, the claimant has the burden of proving that his employer and/or insurer were provided with written notice of his claim, the employer and/or insurer failed to pay the claim due within 60 days after receipt of the written notice, and that the employer and/or insurer were arbitrary and capricious, or without probable cause in the failure to pay compensation benefits due. La.R.S. 23:1201.2;[6]Miller, 646 So.2d at 337; Coleman v. Crown Zellerbach Corporation, 421 So.2d 300, 302 (La.App. 1st Cir.1982); see Patin v. Continental Casualty Company, 424 So.2d 1161, 1165 (La.App. 1st Cir.1982), writ denied, 429 So.2d 145 (La.1983). An employer's good-faith defense will preclude an attorney's fee award. Coleman, 421 So.2d at 302.
Because La.R.S. 23:1201.2 is penal in nature, it must be strictly construed when a determination is made regarding the award of attorney's fees. Danzey, 657 So.2d at 497; Graham, 643 So.2d at 363; Holland v. T.G. & Y. Stores, 451 So.2d 1317, 1321 (La.App. 1st Cir.1984). It should only be used to impose an attorney's fee award in those instances in which the facts show no probable cause for non-payment (emphasis added). Rodney v. Crown-Zellerbach Corporation, 470 So.2d 538, 545 (La.App. 1st Cir. 1985); Robichaux, 426 So.2d at 245. In terminating or failing to pay benefits, an employer's and/or insurer's reliance on a treating physician's report or competent medical evidence that the employee has been released to return to work cannot be considered arbitrary and capricious, sufficient to justify an award of attorney's fees. Coleman, 421 So.2d at 302; see Martin v. H.B. Zachry Company, 424 So.2d 1002, 1008 (La. 1982); Rogers v. Pizza Hut, 547 So.2d 1092, 1095 (La.App. 1st Cir.), writ denied, 552 So.2d 384 (La.1989); Willie v. Balehi Marine, *378 Inc., 525 So.2d 231, 235 (La.App. 1st Cir.1988); Holland, 451 So.2d at 1321.
It is undisputed that a written demand for reinstatement of weekly benefits was sent to an adjustor for Lyons on July 12, 1994, and that SEB were not paid within 60 days of the receipt of this demand. However, the hearing officer was not reasonable in finding Lyons was arbitrary and capricious in its failure to pay SEB.
After reviewing the record in its entirety, we find that the medical reports and records of Dr. Boucvalt, Dr. Wilson and Dr. Laughlin provided Lyons with probable cause for not paying supplemental earnings benefits. Thus, Lyons established a good faith defense for its failure to pay SEB and was not arbitrary and capricious. See Coleman, 421 So.2d at 302. Consequently, the hearing officer's award of attorneys fees is unsupported by statute, jurisprudence, or the record and is clearly wrong.

ATTORNEY'S FEE AWARD FOR FAILURE TO TIMELY PRODUCE WAGE RECORDS
In its fifth assignment of error, Lyons contends that the hearing officer lacked a legal basis to assess it with an $1,000.00 attorney's fee for its failure to promptly produce wage records. We agree.
The record contains a set of interrogatories that were propounded upon Lyons on March 30, 1995. Two of these interrogatories, numbers 4 and 5, seek a description of how Lyons arrived at the calculation of weekly benefits paid to Washington. Although the record contains correspondence between the parties which refers to a request for production of documents, there is no request for production of documents in the record. Between March 30 and April 11, 1995, Lyons produced wage records from July 8, 1994, through March 31, 1995; however, it failed to produce wage records for the time period preceding Washington's first accident. The wage records for this latter period were forwarded to Washington's counsel on April 13, 1995, prior to the filing of its motion to compel. Moreover, on April 18, 1995, Washington's attorney sent a facsimile to Lyons' attorney, specifying his dissatisfaction with all but three of the interrogatory responses. Importantly, interrogatory numbers 4 and 5 were among the three about which Washington's attorney did not complain. A motion to compel was filed on April 20, 1995. The hearing was held on May 3, 1995. At the hearing, there was no mention of any failure to promptly produce the wage records. Additionally, based on a statement by Washington's attorney that Lyons had complied with substantially all of his request, the hearing officer declined to assess any attorney's fees at that time.
Apparently, there was also a dispute regarding the production of "pick tickets" which showed the items that Washington pulled to fill orders. Prior to trial, Lyons provided "pick tickets" for a two-week period in April 1995 and contended that these were the only "pick tickets" it had because it was a relatively new policy to retain these records. It was not disputed that Washington was provided with the same "pick tickets" that Lyons had in its possession at trial; however, Washington contended that Lyons must have retained "pick tickets" from other time periods. During the trial, the hearing officer expressed her trust of Lyons' counsel, as an officer of the court, that it had produced all of the "pick tickets" that had been retained by Lyons. Nevertheless, she subsequently noted the failure to produce the "pick tickets" as a basis for the $1,000.00 attorney's fee award.
Importantly, the transcript of the May 3, 1995 hearing on Washington's motion to compel responses to interrogatories does not clearly address the issue of the production of the "pick tickets." Washington's attorney admitted that he did not file a formal motion to compel the production of documents, but the hearing officer, with the consent of Lyons' attorney, allowed him to address the failure to produce certain documents at the same hearing. Because the request for production of documents is not a part of the record on appeal, we have no way of knowing whether or not the pick tickets were requested through formal discovery. Moreover, at the conclusion of the hearing, the hearing officer expressly stated the problems that *379 Washington had with Lyons' responses to interrogatories and request for production and what Lyons had to do to remedy the problems. During this recitation, the "pick tickets" were not addressed as an item of dissatisfaction. Despite the fact that the issue of the timely production of "pick tickets" was raised by Washington at trial, it is clear that no order was issued for the production of any pick tickets at the May 3, 1995 hearing.
Louisiana Code of Civil Procedure article 1469 allows a party to move for an order compelling discovery. This article provides in pertinent part:
(4) If the motion is granted, the court shall 2 ... require the party ... whose conduct necessitated the motion ... to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees....
There is no provision for an award of attorney's fees for the failure to properly respond to discovery absent the filing of a motion to compel the discovery.
Despite the lack of a motion to compel that addressed the failure to produce wage records or the "pick tickets," the hearing officer assessed Lyons with attorney's fees at trial for the failure to promptly answer claimant's discovery, particularly those concerning his wage records and work duties. As no order was ever issued for the production of these documents, the award of attorney's fees must be reversed. See La.C.C.P. art. 1469.

CALCULATION OF AVERAGE WEEKLY WAGES
Lyons contends, in its sixth assignment of error, that the hearing officer erred by using the four full weeks before the first accident as the basis for calculating the average weekly wage of Washington to determine the amount of SEB owed from the second accident.
The hearing officer concluded that it was unreasonable to use the five days Washington worked before the second accident to calculate his average weekly wage. She reasoned that the second accident was not a new accident. Thus, she concluded that the four weeks worked by Washington prior to the first accident were the ones to use to calculate his average weekly wage.
Louisiana Revised Statutes 23:1021(10)(a)(i) provides:
(10) "Wages" means average weekly wage at the time of the accident.
The average weekly wage shall be determined as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater....
The language of the statute indicates the legislature's intent to provide the worker with the maximum hours available by using the greater of an average of four weeks work or the wage at forty hours. Fusilier v. Slick Construction Company, 94-11 (La.App. 3d Cir. 6/1/94); 640 So.2d 788, 792.
We need not decide whether the hearing officer erred in concluding the second accident was not a new accident. Whether the second accident was a new accident or an aggravation of Washington's injuries caused by the first accident, the last four full weeks worked by Washington occurred before the first accident. Thus, under the present facts, it was proper to use the average actual hours worked during the four full weeks before the first accident to calculate his average weekly wage.
The record reveals that the last full week worked by Washington prior to the second accident concluded on April 15, 1994. Between March 19th and April 15th, Washington worked a total of 187.75 hours. This results in an average of 46.94 actual hours worked during this four week period. Forty of these hours were compensable at his standard hourly rate of $5.70. However, 6.94 of these hours were overtime and payable at an hourly rate of $8.55. Thus, Washington's average weekly wage should have been $287.34. See La.R.S. 23:1021(10)(a)(i); Henderson, 667 So.2d at 1097; Vincent v. Justiss Oil Company, Inc., 94-329 (La.App. *380 3d Cir. 11/2/94); 649 So.2d 508, 510, writ denied, 94-2869 (La. 1/27/95); 650 So.2d 242.

PAYMENT OF MEDICAL EXPENSES
In its tenth assignment of error, Lyons complains that the hearing officer erred by finding the work hardening program was reasonable and necessary. It bases this contention on the theory that Ms. Johnson made her recommendation without the knowledge that, at one of his visits with Dr. Gerdes, Washington could bend up to 90 degrees without pain. Washington concedes there is evidence that he could bend up to 90 degrees at the waist during some part of his treatment, but argues that he was not required to pick up anything when he was able to bend 90 degrees. There is no dispute that a work hardening program is compensable treatment under the workers' compensation act when such treatment is deemed reasonable and necessary.
Additionally, in its seventh and eighth assignments of error, Lyons contends the hearing officer erred by ordering Lyons to pay for the physical therapy and treatment provided at Metro because the treatment was not performed by a licensed physical therapist.
We note that Louisiana Revised Statutes 23:1203 imposes a duty on the employer to furnish the employee with "all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal...."

Work Hardening Program
The hearing officer made a factual determination that the work hardening program was reasonable and necessary. There is ample evidence in the record, from both Ms. Johnson and Mr. Lipinski, that Washington would benefit from a work hardening program. Moreover, Ms. Johnson's recommendation for such a program came after her administration of numerous lifting tests to Washington. The hearing officer could have reasonably found that Ms. Johnson's recommendation of this program would not have changed had she known that Washington was previously able to bend at the waist up to 90 degrees without pain. Thus, the hearing officer was not manifestly erroneous in ordering Lyons to pay for a work hardening program for Washington. This assignment of error is without merit.

Physical Therapy Treatment
In the present case, the hearing officer found that the physical therapy treatment rendered to Washington was reasonable and necessary. Dr. Mauterer initially prescribed the therapy and Dr. Gerdes continued the recommendation for the therapy treatment. Moreover, Dr. Laughlin, who conducted the IME, testified that he would have recommended physical therapy treatment for Washington if he had seen Washington when Dr. Gerdes had seen him. In light of this evidence, we cannot say the hearing officer erred in concluding that the physical therapy was a reasonable and necessary medical expense.
Additionally, Lyons contends the hearing officer committed legal error in ordering it to pay for the physical therapy treatment because it was not administered by a licensed physical therapist, and thus, it was not a legal medical expense under the workers' compensation act.
The employer's or insurer's duty to supply necessary medical expenses only extends to those expenses that are legal. See La. R.S. 23:1203. No person shall practice, or in any way hold himself out, or designate himself, as a physical therapist unless duly licensed. La.R.S. 37:2402. However, a person not licensed as a physical therapist may be employed in a hospital, institution, clinic, physician's office, or athletic training room to administer treatment under the direction and supervision of a licensed physician. La. R.S. 37:2410(B).
It is undisputed that the persons who administered modality treatments to Washington at Metro were not licensed physical therapists. However, Dr. Gerdes testified that these persons were under his direction and control. Accordingly, the treatment was proper under La.R.S. 37:2410(B). Thus, we reject Lyons' contention that the modality treatments rendered at Metro were not legal medical expenses.
*381 Finally, Lyons argues that its liability for the modality treatments performed at Metro should be limited to $750.00 pursuant to La.R.S. 23:1142. We disagree.
Louisiana Revised Statutes 23:1142 provides in pertinent part:
B. Nonemergency care. Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's worker's compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
E. Exception. In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
Thus, under La.R.S. 23:1142(E), when an employer or insurer has denied that a claimant's injury is compensable, the statutory cap does not apply. See Williamson v. CIGNA/Insurance Company of North America, 595 So.2d 325, 329 (La.App. 3d Cir.), writ denied, 596 So.2d 197 (La.1992).
Lyons has consistently contested the nature and extent of Washington's disability, as well as the necessity of the modality treatments provided to Washington. Accordingly, it is not entitled to the statutory cap on liability for unapproved nonemergency medical treatment.

ASSESSMENT OF COSTS
In its eleventh assignment of error, Lyons contends that the hearing officer erred by awarding costs to Washington. The hearing officer assessed Lyons with all costs of the proceedings, including but not limited to the deposition fees of Dr. Gerdes and Dr. Laughlin and the expert witness fees of Mr. Lipinski. We find no error in this assessment.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La.C.C.P. art. 1920. Thus, under general civil law, the question of awarding costs is discretionary with the trial judge, except as otherwise provided by law. Smith v. Two "R" Drilling Company, Inc., 606 So.2d 804, 816 (La.App. 4th Cir.), writ denied, 607 So.2d 560 (La. 1992). Under workers' compensation law, costs may be awarded by the hearing officer, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings. La.R.S. 23:1317. Accordingly, the question of awarding costs under both the general civil provisions and the specific workers' compensation statute, is within the sound discretion of the court or the hearing officer. Smith, 606 So.2d at 816. Additionally, court reporting deposition fees are properly taxed as court costs where depositions are introduced into evidence. Keyes v. Rockwood Insurance Co., 502 So.2d 223, 227 (La.App. 3d Cir.1987). On review, the trial court's assessment of costs can be reversed only upon a showing of an abuse of discretion. Thibodeaux v. USAA Casualty Insurance Company, 93-2238 (La.App. 1st Cir. 11/10/94); 647 So.2d 351, 362.
The depositions of Dr. Gerdes and Dr. Laughlin were used at trial in lieu of the live testimony of the doctors. Thus, these expenses were properly assessed as costs. See Keyes, 502 So.2d at 227. Washington's expert, Mr. Lipinski, testified at trial and was not deposed. Reasonable expert witness fees are a permissible cost for which a party may be cast. See City of Baton Rouge v. Noble, 535 So.2d 467, 474 (La.App. 1st Cir. 1988), writ denied, 539 So.2d 632 (La.1989). Moreover, at the September 25, 1995 hearing, the hearing officer informed Lyons' counsel that he could file a motion to traverse the bill submitted by Mr. Lipinski. The record does not reveal whether such action was taken.
In light of the great discretion given to the hearing officer with respect to the assessment of costs, we cannot say she was *382 manifestly erroneous in assessing Lyons with the costs of the compensation proceeding. Consequently, this assignment of error is without merit.

CONCLUSION
For the reasons stated in this opinion, the decision of the hearing officer is affirmed in part and reversed in part. Those parts of the decision that award Washington SEB and cast Lyons with the cost of the modality treatments at Metro, a work hardening program and costs of the compensation proceeding are affirmed. Additionally, for the reasons expressed in this opinion, the part of the decision requiring the average weekly wage of Washington to be based upon the four weeks prior to April 21, 1994, is affirmed. Using this basis, Washington's average weekly wage is $287.34. All parts of the decision that assess Lyons with penalties and attorney's fees are reversed, as is the part of the decision entitling Washington to his choice of orthopedist. Costs of this appeal are to be assessed equally between Washington and Lyons.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] The cover of the record refers to defendant as Lyon's Specialty Company. However, in its answer, defendant refers to itself as Lyons Specialty Co., Inc. Additionally, defendant is referred to as Lyons Specialty Company, Inc., in the briefs to this court.
[2] Judge Carl A. Guidry, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[3] Dr. Lon A. Boucvalt's medical records indicate that Washington was treated on June 14, 1995 for a back strain. However, the parties stipulated at trial that Washington had an accident in the course and scope of his employment on June 15, 1994.
[4] Lyons also relies on Williams v. Payne & Keller, Inc., 442 So.2d 1207 (La.App. 5th Cir.1983) to support this contention. However, this reliance is misplaced. In Williams, a substantive change was made to a first judgment after it had been signed. There was no finding by the court that it was improper to make a change during the time that the decision was being recited in open court. Thus, we do not find the Williams case persuasive on the issue presently before us.
[5] Our references to La.R.S. 23:1201 and La. 23:1201.2 are as these provisions read at the time of Washington's accident and prior to their amendment by 1995 La.Acts No. 1137.
[6] We note that the 1995 amendment to La.R.S. 23:1201.2, effective June 29, 1995, deleted the provision regarding the payment of a claim "within sixty days after receipt of written notice." See 1995 La.Acts No. 1137.